MAMIE LANE v. MINNESOTA STATE AGRICULTURAL SOCIETY.[1]

December 28, 1896.

Nos. 10,236—(154).

**Exception to Instructions.**

Seven separate requests for instructions to the jury were made by the defendant in this case, several of which were erroneous, and all were refused, except as given in the general charge. The only exception taken to the action of the court was to the effect that the defendant excepts to the refusal to give those portions of the requests which the court refused, and which are not covered by the general charge. *Held*, that the exception was insufficient as a basis for any assignment of error.

**Negligence—Race Horse—Track Bolter—Evidence.**

The basis of the plaintiff's cause of action was the negligence of the defendant in knowingly permitting a dangerous horse, a track bolter, to run in a race controlled by it, and in which the plaintiff rode and was

[1] Reported in 69 N. W. 463.

67 M.—5

injured, without informing her of the vicious character of the horse, of which she was ignorant. On the trial there was evidence tending to show that the horse, to the knowledge of one of the officers of the defendant, would bolt in practice; also that the horse came upon the race track wearing blinkers. *Held*, that it was not error for the trial court to receive evidence to show that a race horse which bolts in practice will usually do so in an actual race; and, further, for what purpose blinkers are put on race horses.

**Evidence.**

   *Held*, further, that the trial court did not err in sustaining an objection to a question intended to show the position of the horses at the time plaintiff was injured, for the reason the witness had previously fully and clearly testified upon and covered the point.

Appeal by defendant from an order of the district court for Ramsey county, Brill, J., denying a motion for a new trial. Affirmed.

*Ira B. Mills* and *Clapp & Macartney*, for appellant.

*Schoonmaker & Fleming*, for respondent.

START, C. J. This is the second appeal in this case. See 62 Minn. 175, 64 N. W. 382. The action was brought to recover from the defendant damages for injuries received by the plaintiff, while riding in a running race at the State Fair held September 10, 1891, by reason of the negligence of the defendant. The plaintiff had a verdict for $3,000, and the defendant appealed from an order denying its motion for a new trial.

The specific act of negligence which is the basis of plaintiff's cause of action is that the defendant knowingly permitted a vicious and dangerous horse known as "Isaac B.," a track bolter, to run in the race in which plaintiff rode, without informing her of the unusual danger to which she was thereby exposed, and of which she was ignorant.

1. The first assignment of error is:

"The court erred in refusing to direct a verdict for the defendant, because (a) the case now shows that the defendant is not such a corporation as would render it liable in any event; (b) the evidence is not sufficient to make out a cause of action."

We cannot consider this assignment of error, because it is not supported by any proper exception to the refusal of the court to give the requested instruction. The defendant presented to the trial court seven separate special requests for instructions to the jury, of

which No. 1 was in these words: "That the jury find a verdict for the defendant." The second request was refused, except as given in the general charge; the balance were refused absolutely. It is manifest, from reading them, that several of the requests were properly refused. The exception was to the effect that the defendant excepts to the refusal of the court to give "those portions of the requests which your honor refused, and which are not covered by the general charge." Other than this, there was no exception to the refusal of the court to give the defendant's first request.

The object of an exception is to call the attention of the court to some specific error, so that it may act intelligently in considering it. The exception in question did not call the attention of the court to any specific error in refusing the seven requests, but left the judge to find it out by comparing his general charge with the seven requests. It is claimed by defendant, in support of its exception, that request No. 1 was so inconsistent with any submission of the case to the jury as to render the exception sufficiently specific to comply with this rule. The exception, however, was not to a refusal of the court to give those portions of the requests which were inconsistent with the general charge, but it was to the refusal to give such portions of the requests which were "not covered by the general charge." There were several of the requests which were not covered by the general charge which were erroneous. The exception was insufficient as a foundation for any assignment of error. Carroll v. Williston, 44 Minn. 287, 46 N. W. 352; Steffenson v. Chicago, M. & St. P. R. Co., 51 Minn. 531, 53 N. W. 800; Delude v. St. Paul C. R. Co., 55 Minn. 63, 56 N. W. 461; Webb v. Fisher, 57 Minn. 441, 59 N. W. 537.

2. The second assignment is this:

"The court erred in overruling the defendant's objection to the following question: 'Based upon your experience as a horseman, if a horse is shown to have bolted in practice, will he usually bolt in an actual race?'"

The question was objected to as incompetent and immaterial, and that witness was not qualified to answer it. The objection was overruled. The witness answered substantially in the affirmative. The witness was shown to be competent, and the evidence was material if the subject-matter of the question was one for expert testimony. The habit of "track bolting" in a running horse, and whether, if he

bolts in a practice race, he will be likely to bolt in an actual race, is not a matter of such general knowledge as to exclude expert evidence thereon.    There was evidence in the case tending to show that the defendant's secretary and former superintendent at one time owned the horse Isaac B.; that he was an experienced horseman, and well informed as to races and racing horses, and that he knew that this horse would bolt in practice; hence the evidence here in question was material, as tending, in some degree, to show notice to the defendant that this horse was liable to bolt in an actual race.    The objection to the question was correctly overruled.

3. The third alleged error is in these words:

"The court erred in refusing to permit the defendant to prove by the witness Antoinette Peteler that she and Miss Poole were close together at a time when Isaac B. was in the lead, and to prove what was said between these two witnesses, and to prove how far Isaac B. was in the lead at that time."

It is necessary, in order to understand the force of the defendant's claim under this assignment of error, to state briefly the relative positions of the horses in the race, and the manner in which the plaintiff claims to have been injured.    There were five horses in the running race, which was a mile dash, and the horses started in the following order:    Buckthorn, ridden by Antoinette Peteler, had the inside of the track; Little Joe, ridden by Miss Poole, was next; then followed Ethel, ridden by the plaintiff; Dyer, by Mrs. Rush, had fourth place; with Isaac B., ridden by Miss Neal, fifth, or on the outside.    These positions were changed before the horses reached the quarter post, at which point the evidence on the part of the plaintiff tends to show that Buckthorn was still in the lead, and that Little Joe and Isaac B. were running close together, the latter on the outside, but a trifle in advance; and when they were between the quarter and five-sixteenth posts, Isaac B. ran against Little Joe, knocking him down, and the plaintiff's horse tumbled over him, whereby she was thrown from her horse, and seriously injured.    The defendant's evidence tended to show that Isaac B., at the time of the accident, was ahead of Little Joe, running with Buckthorn, if not leading him; hence he could not have run against Little Joe.    The relative position of the horses at the time of the accident was material.

The manifest purpose of the evidence, which this third assignment of error implies was excluded by the court, was to show that Isaac B.

was in the lead at the time of the accident. If it be true that the trial court did exclude evidence of such fact, it was reversible error. But the record shows that the witness Peteler was permitted to testify fully and explicitly to the fact that Isaac B. was in the lead of all the horses at the time of the accident, and how far ahead. This conclusively appears from the following abstract of her evidence:

Q. "Where was Isaac B. at the time this accident happened?" "A. In the lead. Q. Which horse was next to Isaac B. when this accident happened?" "A. Buckthorn,—the one I rode. Q. How far ahead of you was Isaac B. at the time this accident happened?" "A. About two and a half or three lengths,—horse lengths. Q. Did either of the horses ridden by Miss Lane or by Miss Poole come in contact with Isaac B. before or at the time of this accident in that race?" "A. No, sir." "Q. Were you and Miss Lane near together during that race? and, if so, state what took place while you were near together." "A. I can't say where Miss Lane was, but Miss Poole was right next to me. Mr. Schoonmaker: I move to strike out that answer as not responsive. The Court: The first part of it is responsive, and the rest of it isn't. Q. What do you mean by that? A. I recollect that Miss Poole and I were close together— Mr. Schoonmaker: Now, wait a minute. That portion was stricken out. I object to that as immaterial and irrelevant and incompetent. (The objection was sustained. Defendant excepted.) Q. Which one of you—Miss Poole or yourself—had the inside track? A. I did. Q. Was anything said between you and Miss Poole at that time? What was it? (Objected to as immaterial, irrelevant and incompetent. Objection sustained. Exception by defendant.) Q. Where was Isaac B. at that time? (Objected to as incompetent, and assuming something that is not shown in the evidence, and it would be too indefinite, too. Objection sustained. Exception by defendant.) Q. How far in the lead at that time? (Same objection as last before. Objection sustained. Exception by defendant.) Q. For how long a distance after you passed Miss Poole did Isaac B. keep in the lead of you? A. Past the half-mile post. Q. Did you afterwards pass him? A. Yes, sir. * * * Q. Was it possible for Isaac B. to have run against Little Joe from the time that race started until you got to the half-mile post, without your having seen it? A. No, sir. Q. Did Isaac B. at any time run against or come in contact with Little Joe in that race, before you passed Isaac B.?" "A. No, sir. Q. Did Isaac B. come in contact with any other horse in that race, from the starting of the race, until after you had passed him on the track in the race?" "A. No, sir."

Everything which was sought to be proven by the witness was proven by her except what was said between her and Miss Poole. There was nothing in the question, "Was anything said between you

and Miss Poole at that time? What was it?" to advise the court that the conversation between these parties was material. Prima facie it was not, but if, in fact, it were otherwise, it was the duty of the defendant's counsel to indicate to the court wherein it was material. Failing to do so the objection was properly sustained. Bedal v. Spurr, 33 Minn. 207, 22 N. W. 390.

But waiving this, and assuming, for the argument, that what counsel here claims for the evidence sought to be elicited by the question was apparent from its face, still the ruling was right. His claim is that, if the riders of Buckthorn and Little Joe had a conversation after Isaac B. was ahead of both of them, it could not be true that he ran against Little Joe, or that an alleged conversation took place between the riders of Isaac B. and Little Joe. The conversation was not material in and of itself, and it could have been material only so far as it might tend to show that Isaac B. was ahead of all the horses, including Little Joe, at the time of the accident. But this was fully covered by the previous testimony of the witness, who testified directly and absolutely that Isaac B. at this time was in the lead, and 2½ or 3 lengths ahead of all of the horses. The ruling complained of was correct for this reason also. Carlson v. Small, 32 Minn. 492, 21 N. W. 737.

The alleged conversation between the riders of Little Joe and Isaac B., which it is claimed that the answer to the question would tend to rebut, was to the effect that the rider of Little Joe called to the rider of Isaac B., "Pull out your horse," and the latter replied, "I cannot control him." There was no evidence of any such conversation in the case at the time the question was asked of the witness Peteler, and the ruling made. The plaintiff, as a part of her case in chief, offered to show what was said between these riders, but the evidence was excluded on the objection of the defendant. Afterwards, and in rebuttal, the plaintiff did introduce evidence of such conversation. The defendant, however, did not again offer the evidence of the alleged conversation between the riders of Buckthorn and Little Joe.

4. The only other assignment of error which is insisted upon is to the effect that the court erred in permitting a competent witness to state for what purpose blinkers are usually put upon running horses. The answer was that they were put on for two purposes,—one to prevent the horse from bolting, the other to prevent him from swerving

upon the track. Isaac B. wore blinkers in the race, and there was evidence tending to show that they were purchased for him by the secretary of the defendant at the time he owned the horse. The evidence objected to was proper, and the ruling correct, because the purpose of putting blinkers on a race horse is not a matter of general knowledge, and the fact that they are usually put on to keep the horse from bolting was a circumstance proper for the consideration of the jury, in connection with the other evidence, on the question of notice to the defendant of the propensity of Isaac B. to bolt.

Order affirmed.