MARX v. WILLIAMSBURGH CITY FIRE INS. CO.

1. INSURANCE—VENDOR AND PURCHASER—INSURABLE INTEREST—INTOXICATING LIQUORS—LAND CONTRACTS.

Where plaintiff, who was interested in a brewery, furnished the money for the purchase of a saloon and personal property connected therewith, and took the title to the property in his name, selling the saloon and equipment by land contract to the liquor dealer, who agreed to sell no beer except that manufactured by the brewing company with which plaintiff was associated, *held*, in an action on a policy of insurance covering the property, that under the statute (Act No. 313, Pub. Acts 1887; 2 Comp. Laws 1915, § 7032) forbidding any wholesaler from entering into any contract or agreement with a retail liquor dealer to handle exclusively the brand of liquors manufactured by the wholesale dealer, the transaction between plaintiff and the saloon keeper was not void; that the latter had an insurable interest in the premises and the policy was valid and enforceable.

192 Mich.—32.

2. VENDOR AND PURCHASER—CONTRACTS—ILLEGALITY—PARTIAL IN-
VALIDITY.

A land contract that by express provisions was to be in-
validated if the vendee sold other beer than a certain
product described in the writing was not avoided by a
breach of the condition if the agreement was severable and
if, after eliminating the illegal portions, the remainder
of the contract was lawful and supported by sufficient
consideration.

3. SAME—SEVERABLE AGREEMENT—CONDITIONS.

A contract for the sale of land which involved the pur-
chase of the property by plaintiff, by whom the necessary
funds were advanced, and the realty resold on instalment
payments to the liquor dealer, was based on severable
conditions and, hence, not rendered void by the breach of
one of the conditions, where the same did not necessarily
influence the plaintiff to make the agreement and was not
the essential part of the land contract.

4. SAME—WAIVER—EXPLOSIVES—ILLUMINATING GAS.

Where the agent who secured the policy knew of the use
of illuminating gas on the property, and that the gas was
generated thereon, a change made in the manner of gen-
erating the gas, after the insurance was taken out, so as
to produce the gas at a generator instead of at the burner,
did not breach the condition of the agreement; the effect
of such notice or knowledge imputed to the insurer was
to waive the condition and to authorize the insured to
make the change without invalidating the insurance.

5. SAME—FALSE REPORT—ORIGIN OF FIRE—PROOF OF LOSS.

Where the insured stated in his proofs of loss that the
cause of the fire was unknown, but, in fact, he had lighted
a match from which a species of explosion followed, that
might or might not have been caused by the fault of the
gas generating plant, he was not chargeable with such
deception or false representation as to forfeit his rights,
and especially where defendant was not misled or injured
and was not deprived of essential information to which
it was entitled.

Error to Wayne; Hosmer, J. Submitted June 6,
1916. (Docket No. 1.) Decided July 21, 1916.

Assumpsit by Frank Marx against the Williams-burgh City Fire Insurance Company upon a policy of fire insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Ward N. Choate* and *Clifford N. Longley,* for appellant.

*Woodruff & Woodruff* (*Frank W. Atkinson,* of counsel), for appellee.

One Jacob Wahl owned certain premises upon which he conducted a saloon. In the saloon were goods used in the business. Otto D. Neifert had $1,000 in money and wanted to buy the property, the purchase price of which, including the personal property, was $3,500. An arrangement was made according to which the property was conveyed by Wahl to plaintiff, who paid for it, and plaintiff and Neifert made an executory contract for the sale of the realty to Neifert. Plaintiff was an officer of and interested in a concern which manufactured and sold beer. In the Marx-Neifert contract there was a clause reading:

"It is further provided and agreed as a part hereof that no beer except that manufactured by the Marx Brewing Company, or its successors or assigns, shall be sold, handled, or dealt in by said second party, his heirs, or assigns, on said premises, so long as said premises shall be used for saloon purpose; the deed provided for in this contract to contain the same provision."

Neifert contributed $1,000 and Marx $2,500 in the purchase from Wahl, and the contract sale price was $3,500; it being recited therein that $1,000 was payable at its date and that $2,500 remained unpaid. By its policy, issued May 8, 1913, expiring May 8, 1914, issued to Neifert, defendant insured the building in which was the saloon, including permanent fixtures for

heating and lighting, for $600, a barn for $200, certain saloon fixtures for $200, and the stock of merchandise for $400, "loss, if any, payable to Frank Marx, mortgagee, as his interest may appear." Application was made to and the policy issued by a local agent of defendant at Flat Rock, where the property is.

When the policy was issued the saloon was lighted by gas generated from gasoline, the system being what is known as a hollow wire gasoline lighting system, in which gasoline was carried to burners in a hollow copper wire and gas generated at the burners. The policy did not permit gasoline lighting, but the agent of defendant who issued the policy knew that for some years the system was employed in lighting the saloon. On October 16, 1913, the system of lighting was changed; gasoline being thereafter forced from the tank to a generator, where it was generated by heat into gas, the gas being then forced through 1½-inch galvanized iron pipes to the burners. Of this change the agent and defendant had no notice or knowledge. On October 18, 1913, the insured property was destroyed by fire, immediately preceded, it seems, by an explosion caused by a lighted match in the neighborhood of the generator. Neifert, in his proofs of loss, stated the origin of the fire to be unknown. He testified that in his opinion it was gas in the building and the lighted match. The insured assigned his policy and cause of action after the fire to plaintiff, in whose favor a jury returned a verdict for the value of the policy, upon which verdict a judgment was entered.

When the land contract was offered in evidence, it was objected that it was void under the provisions of Act No. 1, Second Extra Session 1912 (2 How. Stat. [2d Ed.] § 5056 [2 Comp. Laws 1915, § 7032]). The objection being overruled, defendant excepted. Defendant presented various requests to charge, including requests for a peremptory instruction, and the ex-

ceptions to refusal of the court to charge as requested and to the charge as given raise three points urged in this court. The first point is that the land contract is absolutely void, and therefore Neifert was not sole and unconditional owner of the insured property, unless of the personal property only. The second point is that the lighting system in use was by the policy a prohibited system; if knowledge of the system employed when the policy was issued would be a waiver of the condition, there was no knowledge of the change made after the policy was issued. It is a part of this contention that the use of the prohibited system caused or contributed in causing the fire. The third point is that plaintiff's assignor falsely swore in the proofs of loss that the cause of the fire was unknown. These points having been argued in the brief for appellant, there is added the following:

"There is also presented three other questions, namely: That the contract was in truth and in fact (if valid here for any purpose) a chattel mortgage (requests 12 and 13, assignment of error 17); that plaintiff may not recover more than the actual money interest which plaintiff's assignor had in the property, namely, $1,000 (request to charge 14, assignment of error 16); and that the court erred in his remarks to the jury in the charge covered by assignments of error 18 and 19."

OSTRANDER, J. (*after stating the facts*). 1. The statute relied upon is an amendment of section 2 of Act No. 313, Pub. Acts 1887, entitled:

"An act to provide for the taxation and regulation of the business of manufacturing, selling, keeping for sale, furnishing, giving, or delivering spirituous and intoxicating liquors, and malt, brewed, or fermented liquors and vinous liquors in this State, and to repeal all acts or parts of acts inconsistent with the provisions of this act."

It contains the following (2 Comp. Laws 1915, §
7032) :

"Nor shall such wholesaler enter into any contract,
agreement or other understanding with any person or
firm authorized to sell such liquors at retail, by virtue
of which contract, agreement, or other understanding
or agreement such retailer shall be required to handle
the brand of liquors manufactured or sold by such
wholesaler to the exclusion of any or all other brands
of liquor; * * * and all such agreements, con-
tracts, or other understanding * * * shall be null
and void and of no effect whatsoever."

It is not clear that the statute, or the principle of
which it is declaratory, has any application here be-
cause plaintiff is not, strictly, a manufacturer or whole-
saler of liquor, and it does not appear that the corpo-
ration, of which he is an officer, was in any manner
interested in, authorized, or approved the contract
made by plaintiff and Neifert. Assuming that the par-
ticular clause of the contract relating to the purchase
and sale of beer upon the premises is void, because
obnoxious to the statute, whether the entire contract
is void depends upon whether it is severable, so that,
the illegal agreement being eliminated, there remains
a lawful agreement, supported by a lawful considera-
tion. The identical question was presented and de-
cided in *Koppitz-Melchers Brewing Co.* v. *Behm,* 130
Mich. 649 (90 N. W. 676), and *Dierkes* v. *Wideman,*
143 Mich. 181 (106 N. W. 735), in each of which cases
it was held that the contract considered was not sev-
erable.

The contract now before us is, I think, plainly a
severable one. The owner asked $3,500 for the prop-
erty. Plaintiff bought it from the owner, at the solici-
tation of Neifert, who contributed $1,000 of the pur-
chase money, and with plaintiff agreed to pay the re-
mainder, with interest, to cause the property to be

listed for taxation in his own name, to pay the taxes, keep up the premises, and keep them insured. There is a provision for forfeiting the contract for nonperformance of its covenants, but breach of the promise to sell only Marx Brewing Company beer is not a ground for forfeiture. The testimony does not disclose that the obnoxious stipulation influenced either plaintiff or defendant in making the original arrangement by which plaintiff agreed to buy the property, advance a part of the purchase money, and resell to Neifert.

In the cases I have cited the illegal arrangement was the real arrangement, to which the matters in dispute related and out of which they grew. I conclude that by the land contract Neifert acquired an insurable interest in the premises, and as between himself and the defendant the policy, when issued, was valid.

2. The policy of insurance, no agreement to the contrary being thereon indorsed, was by its terms void "if illuminating gas or vapor be generated in the described building or adjacent thereto for use therein." It is conceded that the indicated forbidden thing existed when the policy was issued and that the defendant's agent knew it. It is not claimed that, if no change had been made in the method of generating gas, or vapor, for lighting, the policy would be avoided. But as the defendant's knowledge of the situation was imputed, and its knowledge of the change in method is not and cannot be imputed, the contention is that the condition stands, violated, with the same effect as though no knowledge of conditions had ever come to defendant. The obvious, and in my opinion the conclusive, answer to this reasoning is that the condition relied upon was waived when the policy was issued; that is, it was agreed, in essence, that generating illuminating gas, or vapor, in the described building or adjacent thereto, would not avoid the policy. Defendant is charged with knowledge of the condition existing

when the policy was issued, and the condition had not changed when the fire occurred. There was no new, or other, or different, breach of the policy condition after the policy was issued.

3. No one who testified at the trial claimed to know how the fire originated beyond this: That the atmosphere seemed to be charged with gasoline fumes, and that the lighting of a match was followed by some disturbance described as an explosion. There is testimony to the effect that it was not, probably, the fault of the lighting apparatus. In filing proofs of loss the insured might have described in detail what occurred, since he was present and lighted the match, instead of saying that the cause was unknown. There were several persons in the room at the time, and support for the charge that the insured was guilty of such fraud and false swearing as to avoid the policy, because he gave neither the details as he saw them nor his own opinion of the cause of the fire in his proofs of loss, seems to me to be lacking. It is not pointed out in what respect he thus deceived defendant, or deprived it of the necessary or convenient knowledge that is supposed to be afforded by formal proofs of loss.

These conclusions relieve me from examining other suggested points.

The judgment is affirmed, with costs to appellee.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.