N. F. ZANE v. HOME INSURANCE COMPANY OF NEW YORK.
SAME v. TRAVELERS FIRE INSURANCE COMPANY OF
HARTFORD.
SAME v. INSURANCE COMPANY OF NORTH AMERICA.[1]

April 20, 1934.

No. 29,744.

[1]Reported in 254 N. W. 453.

*Daggett & Redlund,* for appellant.
*A. J. Rockne* and *O'Brien & Quinlivan,* for respondents.

*HOLT, Justice.*

Plaintiff appeals from the order denying his motion for a new trial.

Policies insuring plaintiff's stock of merchandise and fixtures against loss from fire were issued by three companies. A fire having damaged the property insured, plaintiff sued each company. These actions, tried together, resulted in a verdict for the defendants.

For the purposes of the trial it was stipulated that on October 12, 1931, a fire in the Stoffel store, in Pine Island, this state, caused a loss on plaintiff's merchandise and fixtures therein in the sum of $12,000. At the trial plaintiff admitted that his brother Charles set the fire. In June, 1931, plaintiff moved into the so-called Stoffel store from the Andrist store wherein he had theretofore conducted his business. He bought out a stock of goods and fixtures in the Stoffel store. He had an insurance policy issued by the Home Insurance Company of New York for $5,000 on the stock and $250 on the fixtures in the Andrist building, which was transferred to the

Stoffel store when he ceased to do business in the Andrist building. At the same time he procured a policy from the Insurance Company of North America of $5,000 on the merchandise and $2,000 on the fixtures. On September 2, 1931, the Travelers Fire Insurance Company of Hartford issued its policy for $10,000 on the merchandise and $2,750 on the fixtures. The fire occurred about 3:30 a. m. October 12, 1931, at which time the policies mentioned were in force. The insurance companies defended on the ground of (a) fraud and misrepresentation of the value of the property when the insurance at the Stoffel store was procured; (b) conspiracy of plaintiff and his brother to burn the property; (c) perjury and attempt to defraud the companies in respect to the loss.

The three separate defenses alleged might have been combined and tried as one general scheme or plan of plaintiff to defraud the insurers by obtaining excessive insurance, setting the fire, and attempting to collect the insurance. In such plan or scheme there are generally found facts which make up the three stages or steps here pleaded as separate defenses. But in this trial the parties tried and the court distinctly submitted each of the three defenses pleaded as to each defendant. Hence plaintiff takes the position that, since it cannot be determined upon which of the three defenses the verdict rests, a new trial must result if there was no evidence to support any one of the defenses submitted as to any defendant. Lindemann v. C. R. I. & P. Ry. Co. 154 Minn. 363, 191 N. W. 825; 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7168. Where, however, the record is conclusive that the verdict was founded upon a defense properly submitted and sustained by the evidence, a new trial should not result because there was error in the submission of some other defense pleaded. Vasey v. Saari, 141 Minn. 103, 169 N. W. 478; Bemis Bros. Bag Co. v. Nesbitt, 183 Minn. 577, 237 N. W. 586; Berg v. Union State Bank, 186 Minn. 529, 243 N. W. 696. One cannot read this record without reaching a settled conviction that the jury based the verdict solely upon plaintiff's participation in the arson and his subsequent attempt by perjury and fraud to obtain the insurance. But putting that proposition aside, it is our opinion that

there is evidence from which the jury could find that plaintiff fraudulently procured from each defendant insurance largely in excess of the value of the property covered. There is evidence tending to show that when the policy of $5,250 was obtained from the defendant Home Insurance Company the property insured was worth less than $4,000. But that insurer placed more reliance on this, that when a transfer of this policy, in June, 1931, to the Stoffel store was procured and the additional policy of $7,000 on the same property was obtained from the defendant Insurance Company of North America, the overinsurance was so great as to amount to a fraud on both companies. As we understood counsel for plaintiff, he does not really contend that the evidence is insufficient to support a finding that plaintiff fraudulently procured from the defendant Travelers Fire Insurance Company its policy on the same property in the amount of $12,750, making his total insurance $25,000. Nor could such contention meet with success, for the evidence tends very satisfactorily to show that the insured property was then worth less than $10,000. Except as to the amount of the policies, the figures hereinafter given are merely such as the evidence warranted the jury to find.

Plaintiff was at a hospital in Rochester recovering from an operation performed six days before the fire. So he could not have taken any active part in setting the fire. But his participation could be proved by circumstantial evidence. When at the trial plaintiff admitted that his brother set the fire, the admission was followed by proof suggesting that his brother's motive was revenge. However, there are many facts contradicting the existence of any such motive and tending to prove that the brother tried to serve plaintiff's interest in what he attempted to do. When the Stoffel store was secured plaintiff telegraphed his brother to come from Michigan to help him. His brother came. He did help him. In company they went on a business and pleasure trip to La Crosse. The brother's family stayed at plaintiff's house when they came. When the brother moved to St. Paul plaintiff helped load his goods. He visited the brother in St. Paul. They and their wives visited wholesale houses in St. Paul to buy goods. The brother visited

plaintiff at the hospital the afternoon before the fire. The fire was deliberately planned, excelsior and celluloid films being placed between cases, and chains made of inflammable goods to spread the fire. Gasolene or some other explosive material was used, for an explosion took place which aroused the people living above the store and other neighbors. The explosion set the clothes of the brother on fire, and he was recognized as he ran from the store, a living torch. He was traced by remnants of his clothes as he tore them off, running to a place in an alley where his auto was parked. He drove to the hospital where his brother was. His automobile was placed in a garage, and under the cushion of the seat was found the inventory he had helped his brother take in August, 1931, an inventory that was proved padded, but one needed and used by plaintiff as basis for his proof of loss. Take this picture of two brothers and their relations, and is it not convincing that the one who obtained overinsurance, who padded an inventory taken at an unusual time, who made use of this inventory (carefully taken from its place in the store by the brother before he set the fire) to make fraudulent proof of loss, was the one who planned the fire and procured his brother to carry the plan into execution? It is difficult to conceive of a jury finding otherwise.

Plaintiff made oath to the proof of loss as the statute provides. Therein he stated the value immediately before the fire of the fixtures to have been $5,726.44 and of the stock of merchandise to have been $18,790.30, and also that the cause of fire was unknown. The fire was promptly extinguished so that a very small part of the insured property was consumed. A rather accurate inventory of the property covered by the policies was therefore possible and was taken both by defendants and by the insurance adjuster selected by plaintiff to represent him, and the jury could well find from the evidence that such value was less than $10,000. The jury could also have found from the evidence that plaintiff knowingly swore falsely when he stated in the proof of loss that the origin of the fire was unknown. He then knew that the fire was set by his brother as fully as when he so conceded at the trial. The facts surrounding this statement are quite different from those in Marx v. Williams-

burgh City F. Ins. Co. 192 Mich. 497, 158 N. W. 1052, cited by plaintiff. Both as to the value of the property insured and as to the origin of the fire which caused the damage thereto, we think the evidence justified the jury in finding that plaintiff was guilty of attempt to defraud defendants.

There remain two assignments of error relative to rulings at the trial. Although plaintiff, in the trial, admitted that his brother set the fire, defendants, for the obvious purpose of connecting plaintiff with the act, produced all available testimony as to how the fire was set, what the brother did in reference thereto, and how his escape therefrom was traced. It appears that a Colt revolver, together with the remnants of the brother's coat and trousers, was picked up just after fire started along the course of his flight. Objections were interposed to the reception of the revolver in evidence, and particularly to the testimony that the brother bought such a revolver some weeks previous to the fire from a wholesale house in St. Paul and that a short time before so doing plaintiff, in his presence in the same wholesale house, had been shown the same sort of revolver in a catalogue, but it was not bought because they deemed the price too high. It must be conceded that the connection of plaintiff with the revolver was very slight; but we cannot hold that it was error to receive the revolver in evidence as tracing and identifying plaintiff's brother in his flight from the scene of the crime. Plaintiff was testifying and was asked by his counsel to state what he heard his brother yell when he arrived at the hospital in Rochester, about an hour or so after the setting of the fire. This was objected to as incompetent and hearsay. The objection was sustained. Counsel, before the final ruling, indicated that the witness heard his brother say: "I did an awful thing to Nick. I want to die." It is insisted that this was *res gestae* and admissible on that ground. The offered testimony was, as far as this witness was concerned, self-serving. And this could be taken into consideration by the court, as well as the fact that the brother, who gave utterance to the words mentioned, had had ample time for reflection during the drive from Pine Island to Rochester. The

trial court has a wide discretion in the reception or exclusion of *res gestae* evidence. O'Connor v. C. M. & St. P. Ry. Co. 190 Minn. 277, 251 N. W. 674, and the authorities therein referred to. In any event, the alleged statement is not deemed of sufficient materiality to have affected the verdict.

The motion for a new trial was also on the ground of newly discovered evidence. This alleged newly discovered evidence is that of a nurse, claimed to have heard what plaintiff offered to testify to. The showing of diligence is entirely insufficient, and there was no abuse of judicial discretion in refusing a new trial on that ground.

The order is affirmed.

*DEVANEY, Chief Justice,* absent in attendance upon crime commission, took no part.

