JOHN B. FISCHER v. CHICAGO & NORTH WESTERN RAILWAY COMPANY.[1]

December 14, 1934.

No. 30,105.

[1]Reported in 258 N. W. 4.

74

*William T. Faricy, Warren Newcome, Alfred E. Rietz,* and *Wilson & Wilson,* for appellant.

*Pfau & Pfau* and *Louis P. Johnson,* for respondent.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from an order denying its alternative motion for judgment notwithstanding the verdict or a new trial.

Plaintiff is the managing officer of Purity Sausage Company, the building in which it is located being on Willow street in Mankato alongside the tracks of defendant railway company. It was customary for plaintiff to get up early in the morning to assist in and superintend the loading of products of the company for transportation into the country. On the day of the accident, October 25, 1932, at about 5:40 o'clock in the morning and while it was still dark, he had loaded two loads to be taken out. At the hour mentioned he left the factory in his automobile to go uptown to get breakfast. In going from the factory to the place where he intended to eat he proceeded to cross a series of railroad tracks intersecting at right angles the street upon which he was traveling. He testified that the first track reached was a side track and that he stopped before passing onto it. He then proceeded slowly across the series of tracks. The car was running in intermediate gear, and he estimates that he was not traveling at a rate exceeding approximately ten miles per hour. He claims that upon the fourth track to be crossed by him and a short distance to the right of him, estimated to be between six and eight feet, there was a caboose which interfered with his view in that direction. Then came the Omaha main line track, and the next track to be crossed by him was the main line track of the defendant. Upon reaching this track plaintiff's automobile came into collision with defendant's switch engine which was engaged in a backward movement drawing only a caboose and approaching from his right. He testified that his left window was partly open, that he looked in both directions before proceeding to

cross any of the tracks, and that he continued doing so until the collision occurred; that he did not see the approaching engine until it was only four or five feet distant, when he swung his car to the left trying to avoid a collision but failed because the engine was moving too swiftly and was too near to get away from it. He had seen no light, heard no whistle nor the ringing of any bell. His automobile was struck by the engine near the right front end and as a result was turned around so as to face in the direction in which the engine and caboose were moving. He claims that the engine moved at a very rapid rate of speed and that it passed along almost a block to his left before it came to a stop; that the engine thereafter moved toward him and that someone helped him out of his car and placed him on the steps of what he thought was a caboose (witnesses for defendant say it was a steel coach) until he was taken to a hospital in a police car some 10 or 15 minutes after the happening of the accident.

In behalf of defendant the testimony on the part of the engineer and fireman is to the effect that each was at his place looking toward the crossing for traffic but that plaintiff's automobile was not seen by either of them; that the engine was moving at a very slow rate of speed, estimated at about eight miles per hour; that the bell was ringing and had been ringing continuously for a distance of almost two blocks before the impact took place; that neither saw plaintiff either approaching or being upon the crossing; and that neither knew of his presence thereat until the collision actually took place. Two other servants of the railway company were on the back platform of the caboose. They were facing in the other direction, that is, in the direction from which the engine was moving. As such they did not see or make any effort to look for anyone upon the crossing. They state, however, that immediately upon reaching the crossing there was a sudden jerk, indicating that the brakes had been suddenly applied by the engineer. All of the witnesses mentioned testified that the engine just barely crossed the street crossing and that when it came to full rest the caboose was still partly upon the crossing. They all claim that the engine was moving slowly and that the bell was ringing. These witnesses

also testified that the engine was equipped with headlights on the rear end of the tender, that is, in the direction in which the engine was moving, as well as in front. Of course the light to the front was necessarily directed toward the caboose and as such probably would not afford much, if any, light to a person approaching the crossing, except perhaps the reflection from the caboose.

Plaintiff received certain personal injuries, the nature and extent of which need not be discussed in view of what is hereafter to be said. The jury returned a verdict in his behalf in the sum of $775. The damages to his automobile and his actual expenses of hospital and medical treatment are not far from that sum. So the question of amount to which plaintiff is entitled, if he is entitled to anything, is not in serious controversy.

Defendant urges strenuously that plaintiff failed to establish a case and that even if it be conceded that a case of negligence was made out yet the facts are such as conclusively to show that he was guilty of contributory negligence as a matter of law; hence that it was entitled to a directed verdict. To this phase of the case defendant devotes a very considerable part of its brief.

It must be conceded that when a person approaches a railroad crossing he is in duty bound to make full use of his senses in order to avoid the danger incident to railroad traffic. The railroad track is in itself a warning of danger. A train cannot be brought to a sudden stop, and, as it is traveling upon fixed rails, it necessarily cannot avoid hitting an object suddenly appearing upon its track. It behooves persons so crossing its track to be vigilant for their own safety. We are living in an age where speed in transportation of passengers and goods is an all-important consideration. The case is on the border line. But we are of the view that there are fact questions properly to be determined by the jury both in respect of defendant's negligence as well as plaintiff's contributory negligence. There can be no doubt that one or the other, plaintiff or defendant, was at fault. Perhaps both were. If the fireman and engineer were both watching the crossing it seems peculiar that they did not see plaintiff's car if the engine headlight was burning, as it is claimed to have been, on the rear of the tender of the switch engine. It

seems even more strange that plaintiff's automobile was not seen if, as claimed by plaintiff, his automobile lights were burning. Plaintiff claimed that his automobile lights were on and were functioning; that the lamp on the right-hand side was smashed by the impact, but that the lamp on the left side remained burning so that he could see the engine passing down to his left and by its aid saw the engine come to a stop about a block away. If we were sitting as triers of fact it is possible that we might reach a conclusion different from that reached by the jury. But we cannot say as a matter of law that minds functioning judicially could not come to an opposite conclusion.

Various assignments of error are made in respect of reception of evidence. We shall discuss only one which we believe to be erroneous and of such nature as to require the granting of a new trial. The record establishes that plaintiff was permitted to testify, over defendant's objection, to a statement, claimed by him to have been made immediately after the accident, of how the same was brought about. We quote from the record as to what he claims to have said after having been assisted from the place of accident to the idle caboose or coach:

Q. "That was the caboose standing on the right side of the crossing?

A. "Yes.

Q. "As they took you over there what did you do?

A. "They set me on the steps, on the caboose steps there. After I kind of came to I asked the men, I says, 'For God's sake, men, ain't you—'

Mr. Rietz: "We object to any conversation as hearsay, and no foundation laid.

Mr. Johnson: "It's part of the *res gestae,* a statement made so nearly connected with the collision and accident that it does not come within the hearsay rule and is an exception to it.

Court: "Overruled.

Mr. Rietz: "Exception.

Q. "Go ahead, what did you say?

A. "There was no conversation. I says to the men, 'For God's sake, men, ain't you got no consideration at all for an open crossing, coming down like going to a fire, without any lights,' I says, 'You haven't any lights, you didn't ring a bell or blow a whistle, you don't give a man any warning of any kind that you were around here.' They didn't say a word.

Mr. Rietz: "I ask to have this stricken out as hearsay and immaterial and as being self-serving.

Court: "Denied.

Mr. Rietz: "Exception."

There can be no doubt that the language claimed by plaintiff to have been used is a self-serving statement. Thereby he was enabled to "bolster up his case by testimony that he made a self-serving declaration so closely connected with an injury he received as to be a part of the res gestae," and was thus tempted "to make evidence for himself." That its admission was harmful and prejudicial cannot be doubted. What was said by this court in Perkins v. G. N. Ry. Co. 152 Minn. 226, 233-234, 188 N. W. 564, 567, seems peculiarly applicable here. We quote:

"In effect he was permitted to give in evidence his unsworn self-serving declaration otherwise clearly inadmissible on the theory that because the declaration was part of the res gestae he might testify that he had made it and that, if made, it tended to prove that the facts were as he had related them from the witness stand. In support of this theory [res gestae], it may be argued that the law permits one who heard the spontaneous utterance of a party to testify to it, and hence there is no good reason why the party himself may not testify to his own exclamations. In Lambrecht v. Schreyer, supra [129 Minn. 271, 152 N. W. 645, L. R. A. 1915E, 812], it was said that the testimony might come from the person who made the declaration, but this was said with reference to testimony given by a witness for the plaintiff and not by the plaintiff himself. So far as we have discovered, it has never been held that a party may bolster up his case by testimony that he made a self-serving declaration so closely connected with an injury he received

as to be part of the *res gestae,* and a court should be reluctant to adopt a rule of evidence which would tempt a party accidentally injured to make evidence for himself. Plaintiff's testimony was not made competent because Preus and Coppersmith heard his statement. It would have been just as competent if heard by someone he did not know and could not procure as a witness. In no state has the *res gestae* doctrine been extended farther than in Minnesota. The extension now proposed would not serve the purpose of getting at the truth, which is the sole end towards which all rules of evidence should be directed."

What has just been quoted was referred to with approval in O'Connor v. C. M. St. P. & P. R. Co. 190 Minn. 277, 282, 251 N. W. 674, 677. See also Zane v. Home Ins. Co. 191 Minn. 382, 254 N. W. 453, 455.

Other assignments of error have been examined and have been found to be without merit or such as are not likely to recur upon a retrial; hence these are not discussed.

We think the order appealed from should be reversed and a new trial granted.

So ordered.

