FLORENCE M. MANAHAN v. ELMER JACOBSON
AND ANOTHER.[1]

July 9, 1948.

No. 34,581.

[1]Reported in 33 N. W. (2d) 606.

*F. J. O'Brien,* for appellant.
*James T. Spillane,* for respondents.

LORING, CHIEF JUSTICE.

Action for wrongful death of plaintiff's intestate, Francis J. Manahan, who died as the result of an automobile accident March 22, 1946. The jury returned a verdict in favor of defendants. From an order denying plaintiff's subsequent motion for a new trial, this appeal is taken.

On March 21, 1946, defendant Elmer Jacobson authorized his son, defendant Marvin Jacobson, to use the former's automobile on a drive to Winona for a meeting of employes of the Skelly Oil Company, by which Marvin was employed. Decedent, likewise an employe of Skelly, accompanied Marvin on the trip at the latter's invitation. On the return trip from Winona the accident occurred on trunk highway No. 14 east of Rochester at about 12:30 a. m.

At the trial, Marvin testified that when they arrived at a point some distance east of Rochester he told decedent that he was sleepy and that the latter should take over and drive from that point on; that, in compliance therewith, decedent then commenced driving the car and was driving at the time of the accident. In corroboration of this testimony, defendants submitted the testimony of two witnesses who arrived shortly after the accident. They testified that on their arrival they observed the car overturned, the body of decedent some 50 feet from the car, and Marvin lying against the car's side. They both testified in substance that at that time Marvin, referring to decedent, kept repeating, "I shouldn't have let him drive; it's all my fault; I shouldn't have let him drive."

Shortly after the accident, however, upon examination by the county attorney, who was investigating the case, a sworn statement was executed by Marvin, which was also received in evidence, wherein he stated:

"* * * At about 11 o'clock we left the Candy Box [Skelly meeting place] with me driving the car, and started for home. First we stopped at the Highway Cafe junction of Highways 14 and 61 in the City of Winona. * * * We were there for about ten or fifteen minutes, then we again started for home. I was driving at a speed of about fifty to fifty-five miles per hour all the way. I cannot remember how the accident happened; I think I must have fallen asleep at the wheel. The last I remember seeing was the lights of Eyota and the next thing I remember is picking myself up by the crushed rock pile north of the highway where my wrecked car lay. I did not see Manahan [decedent] after the accident. I do remember that as far as I know Manahan was always awake, except I think he was asleep for a short time when we passed through Stockton * * *."

At the trial Marvin explained his signature to the foregoing statement as follows:

"Q. * * * how did you happen to sign the statement you did?

"A. I don't know, I think I was more disgusted and wanted to get out of there.

"Q. You thought if they wanted it that way they could have it that way; is that right?

"A. Yes."

Testimony of other witnesses was submitted indicating that at other times and in other conversations Marvin had made statements to the effect that he, not decedent, was driving the car at the time of the accident. On the stand, Marvin said that he did not remember making such statements.

In support of the motion for new trial, on the ground of newly discovered evidence, plaintiff presented the affidavit of one Edward J. Kelly, who affirmed:

"* * * two or three days after a trial in Rochester last fall when Jacobson [defendant] was sued, he came into the affiant's place of business. * * * That he told this affiant he felt badly about the results of the trial at Rochester as he was driving his Dad's car at the time of the accident when the Manahan boy was killed."

On appeal, plaintiff contends, first, that the verdict of the jury is not sustained by the evidence; second, that the trial court abused its discretion in denying plaintiff's motion for new trial on the ground of newly discovered evidence; and, third, that the trial court erred in admitting over objection the testimony of one of the defendants as to certain conversations with the other, hereinafter set forth.

1. We cannot say that as a matter of law there was not sufficient evidence to support the jury's verdict. It is true that Marvin made varying statements as to who was driving the car at the time of the accident. However, under oath upon the witness stand and while subject to cross-examination by opposing counsel, he repeatedly testified that decedent was driving when the accident occurred. The jury weighed all such evidence, including Marvin's conflicting statements; the circumstances under which they were given; the demeanor of the witnesses on the stand; their interest or disinterest in the outcome; and from all such factors determined where credibility lay. The burden rested upon plaintiff to prove that Marvin was the driver of the car. The jury might have rejected Marvin's testimony on the stand and accepted as the truth his conflicting statements. While such evidence may have sustained a contrary verdict, as a matter of law we cannot say that plaintiff's evidence was such that a directed verdict on this issue was required.

2. The newly discovered evidence consisted of a sworn statement from Edward J. Kelly to the effect that after the trial Marvin told him that he (Marvin) was actually driving the car at the time of the accident. Several witnesses at the trial testified to the same effect. Kelly's testimony would be merely cumulative of a vast amount of testimony along that line submitted at the trial and weighed by the jury. Where newly discovered evidence is cumulative only, it is within the discretion of the trial court to determine whether the ends of justice require a new trial because thereof. See, 5 Dunnell, Dig. & Supp. § 7125, and numerous cases cited. Under the circumstances described, we cannot say that there was such an abuse of discretion on the part of the trial court as to require a reversal by this court of its order.

3. With reference to the testimony elicited from Elmer Jacobson, father of Marvin, to the effect that at the hospital, some 22 hours after the accident, Marvin had said to him, "It's my fault, I shouldn't have let Shan drive the car," it would seem that such evidence was improperly received. See, State v. La Bar, 131 Minn. 432, 155 N. W. 211; In re Estate of Lust, 186 Minn. 405, 243 N. W. 443; O'Connor v. C. M. St. P. & P. R. Co. 190 Minn. 277, 251 N. W. 674; Fischer v. C. & N. W. Ry. Co. 193 Minn. 73, 258 N. W. 4. However, examination of the record discloses that upon examination by his counsel Marvin testified without objection as follows:

"Q. When did you first tell your father that Francis was driving the car?

"A. Up there in the hospital, I think I believe that was the first time.

"Q. That was the same morning of the accident. Now when did Mr. Harber come to your house in Chatfield?

"A. That afternoon."

The trial court has a wide discretion in determining the probable effect of evidence erroneously admitted. See, Marks v. Brown, 138 Minn. 405, 165 N. W. 265; Gibbon Farmers Elev. Co. v. Herschmann, 160 Minn. 326, 200 N. W. 293. A party may not complain because of the subsequent reception of evidence previously admitted without objection. See, Alfred Shrimpton & Sons, Ltd. v. Philbrick, 53 Minn. 366, 55 N. W. 551; Lane v. Minnesota State Agr. Society, 67 Minn. 65, 69 N. W. 463; Holman v. Kempe, 70 Minn. 422, 73 N. W. 186; McGray v. Cobb, 130 Minn. 434, 152 N. W. 262, 153 N. W. 736; Haeissig v. Decker, 139 Minn. 422, 166 N. W. 1085. These well-established principles compel us to conclude that the error here complained of was not such as to require an order granting a new trial, and that in consequence the trial court did not abuse its discretion in denying plaintiff's motion therefor.

Affirmed.