BUFFALO INSURANCE COMPANY, a corporation, Appellant,

v.

Dorothy K. AMYX, Appellee.

AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, a corporation, Appellant,

v.

Dorothy K. AMYX, Appellee.

ÆTNA INSURANCE COMPANY, a corporation, Appellant,

v.

Dorothy K. AMYX, Appellee.

Nos. 5918–5920.

United States Court of Appeals Tenth Circuit.

Dec. 29, 1958.

Walter Hanson, Oklahoma City, Okl. (Clarence P. Green, Oklahoma City, Okl., on the brief), for appellants.

C. D. Cund,[a] Duncan, Okl. (Jerome Sullivan, Duncan, Okl., on the brief), for appellee.

Before PHILLIPS, MURRAH and LEWIS, Circuit Judges.

MURRAH, Circuit Judge.

Appellant insurers appeal from separate judgments on an adverse jury verdict in appellee's action to recover on her insurance policies for the destruction by fire of her machine shop in Duncan, Oklahoma. Each of the suits was brought in state court on separate policies, insuring the appellee's property against loss by fire in stated amounts. The suits were duly removed to federal court on requisite jurisdictional statements. The consolidated trial resulted in a jury verdict for the appellee, determining the reasonable value of the property loss by fire to be $15,231.14. The court entered separate judgments against the insurers in ratio to their respective coverage. The appeals come here on a common record and brief.

The appellants' first complaint is the refusal of the trial court to enter judgment for them n. o. v. on the grounds that the verdict of the jury for approximately one-half of the submitted and corrected proof of loss was conclusive evidence of their defense of material misrepresentation and false swearing in the proof of loss. And, they moreover earnestly insist that misconduct of the insured voiding the policies was proven as a matter of law, and the court should have so declared.

The trial court submitted these issues to the jury on succinct and emphatic instructions to the effect that it was incumbent upon the insured to prove by a fair preponderance of the evidence the reasonable value of the insured property; but, that it was also incumbent upon the insurers to prove by the same preponderance of the evidence that the policies in question were voided by the insured's misconduct. Specifically, the jury was told that if they found from a fair preponderance of the evidence that the insured misrepresented any material fact in connection with the submitted proofs of loss; or intentionally and deliberately submitted false statements as to the amount of the loss; or caused or permitted the fire to be set with her knowledge, design and consent, their verdict should be for the insurers. No objections or suggestions were made to the instructions, and indeed they correctly declare the law of the case. Tenore v. American and Foreign Ins. Co. of New York, 7 Cir., 256 F.2d 791; Chaachou v. American Central Ins. Co., 5 Cir., 241 F.2d 889; Cuetara Hermanos v. Royal Exchange Assur. Co., 1 Cir., 23 F.2d 270; 29 Am. Jur.Ins. § 1132.

The insured was engaged in the business of selling and repairing stationary oil field engines and magnetos. And, she was also the agent for widely used "Rol-Pak" oil filters for oil field engines. The business was housed in a frame building forty by sixty feet, with a galvanized tin roof. There was a magneto department with equipment for repairing magnetos and a stock of magneto parts. Another part of the building was devoted to the storage of engine parts, including the oil filters; another part to office space; and still another part to the repair of the engines, with equipment for welding and grinding cylinder heads; steam equipment, cleaning vats and hoists. There was evidence to the effect that the equipment was capable of overhauling large oil field type engines at a cost of as much

as $4,000, including the cost of replacement parts.

In support of her proof of loss, the insured testified that after she reopened her business in September 1955 (after having closed it the previous March), she soon commenced an inventory of her stock and equipment; that the inventory was completed about November 14, 1955. The inventory supposedly reflected each item in the building with the estimated cost thereof. By adjusting the inventory to sales and purchases to the date of the fire on December 12, she arrived at a value in excess of $30,000. A competitor in the same town testified that he, his partner and a salesman checked the inventory for cost and found it to be approximately correct; that the amount of the inventory of stock and equipment was not unusually large for the operation of her business, and that it was not as much as his. He testified that to operate and give the overall magneto service which she offered would require a stock of not less than from $8,000 to $10,000 on magnetos alone; and that to his knowledge, she repaired oil field engines of various types and kinds and was fully equipped to do so. Another competitor, who also sold equipment parts for a certain type of engine to the insured, testified that he was a frequent visitor to the insured's place of business; that he was generally familiar with the equipment and stock carried there, and that in his judgment it had a value of between $32,000 and $37,000, and that the equipment alone had a value of about $12,000.

There was countervailing evidence to the effect that her books and records of stock and equipment showed a total value of $7,464.50, and that she would have had to purchase $50,000 worth of parts in 1955 in order to have the stock she claimed at the time of the fire. There were no records, such as invoices of the stock, to support the inventory. There were records of numerous purchases of single items which her inventory showed in substantial quantities. And there was evidence that the inventory reflected certain items of "Rol-Pak" filter elements in excess of the "Rol-Pak" Company's records of sales to the insured for three years preceding the fire, but there was no showing that the insured did not have other sources of supply of these items. One witness, a former employee, testified that many items shown in the inventory were never in fact in stock while he was employed. There was also testimony to the effect that the insured's brother and another party purchased junk which they first burned and then threw into the debris after the fire, ostensibly to lend credence to the inventory, but the insured denied any knowledge of it.

In sum, there was evidence from which the jury might very well have concluded that the inventory was grossly exaggerated, and in fact materially and even fraudulently misrepresented. But we think the issue was clearly one of fact for the jury. It was squarely put and the jury returned a verdict for an amount much less than the submitted proof of loss or the inventory. Sundquist v. Camden Fire Ins. Ass'n, 7 Cir., 119 F.2d 955; American Ins. Co. of Newark, N. J. v. Vann, 4 Cir., 118 F.2d 1004; Joseph Supornick & Son v. Imperial Assur. Co. of N. Y., D.C., 87 F.Supp. 232; Stapleton v. Holt, 207 Okl. 443, 250 P.2d 451.

On the issue whether the jury's verdict for approximately one-half of the corrected proof of loss was wholly irreconcilable with the truth of the proof of loss so as to void the policies, the court instructed the jury that if they believed the reasonable value of the insured contents was less than $30,000, but they also believed the insured was honestly and in good faith mistaken as to the amount of her loss, and that she did not in any way deliberately try to deceive the defendants on any material facts, they should then determine the reasonable value of the contents destroyed by fire and fill in the amount they so found to be reasonable on a submitted interrogatory. In that connection, the jury was also instructed that

a mere mistake or good faith belief that the goods insured were of more value than was ultimately assigned to such goods would not of itself constitute false swearing to void the policies; and this even though the submitted proof of loss was higher than the ultimately recognized and approved value. Then followed a reiterated admonition to the effect that if the insured intentionally and deliberately tried to mislead the insurers by submission of a proof of loss in excess of that which she knew she had suffered, such misrepresentation or false swearing would void the policies. In sum, the jury was told that the claim stood, not upon its accuracy, but its bona fides. Again no objections, exceptions or suggestions were made to these instructions, and they clearly state the prevailing law. And see Jose Rivera Soler & Co. v. United Firemen's Ins. Co., 299 U.S. 45, 57 S.Ct. 54, 81 L.Ed. 30. We think the proof clearly presented the issue of good faith and honest belief on the question of value, and the court did not err in submitting it to the jury under instructions which were too plain for mistake. Nor did it err in giving the jury verdict conclusive effect in the ultimate determination of vitiating fraud.

■ On the further issue of fraud and to show that the insured either caused the fire to be set or permitted it to be done by her brother, now deceased, but who was then in her employ on a share the profits but not the loss basis, the insurers offered deposition evidence of an inmate of a penal institution. This witness testified that soon after the fire, he drove with the brother in an automobile furnished him by the insured to a fishing camp in Arkansas, where they visited a man named Tom Hinson, who had been severely burned; that the brother of the insured brought Hinson clothes and groceries and paid his doctor bills; and on the return trip to Duncan told him that he, the brother of the insured, had caused the insured premises to be burned by Tom Hinson, who was

burned while doing it; and that it was "burned for insurance." There was also proffered deposition evidence by those at the fishing camp to the effect that Tom Hinson was away from his cabin over the week-end of the fire, and that upon his return in the burned condition, stated that his clothes had caught fire at a camp while hunting deer in Mississippi. All of this testimony was excluded on the grounds that it was hearsay and not binding on the insured, and the insurers complain of its exclusion as reversible error.

Conceding arguendo that the incriminating statement made by the brother of the insured was admissible as a confession or declaration against penal interest (see Mason v. United States, 10 Cir., 257 F.2d 359), the crucial question is whether it is admissible against the insured as a relevant circumstance to show that she caused or permitted the fire which destroyed the property. See Catalanotto v. Minneapolis Fire & Marine Ins. Co., 15 La.App. 320, 131 So. 705; Zane v. Home Ins. Co., 191 Minn. 382, 254 N.W. 453. For the statement to be admissible against the insured, the narrated act must have been committed by her brother in the scope of his authority as her agent. The question is therefore one of agency, not of evidence, and the burden is upon the insurers to show that the declared act was done within the agent's authority.

There was evidence to the effect that the deceased brother, who made the challenged statement, commenced working for the insured soon after his release from the penitentiary in September 1955; that he assisted her in making the inventory, and that he went to Wichita Falls to purchase the junk which he transported in an automobile furnished to him by the insured, and which he burned and dumped into the debris after the fire. He was working for the insured on a percentage of the profits basis; and he traveled to the fishing camp to visit the burned man in an automobile furnished him by the insured.

While the circumstances of the relation between the brother and the insured may be suspicious, there was no evidence whatsoever that the insured had any knowledge of the trip to the fishing camp or that she ever knew the man who was supposed to have set the fire. Indeed, there is nothing in the narrated statement to indicate that the alleged act of burning the business was done with her knowledge, consent or design. We are constrained to agree with the trial court that the evidence fell short of connecting the insured with the supposed arson, and the court properly excluded it.

Finally, the appellants complain of the allowance of interest on the amount of the loss as ascertained by the jury verdict from a date prior to the entry of the judgment thereon. Under Oklahoma law, interest on the principal amount due "is recoverable from the time the policy becomes due and payable under. its terms." Fidelity-Phenix Fire Ins. Co. of New York v. Board of Education, 201 Okl. 250, 204 P.2d 982, 983. These statutory fire insurance policies provided that the loss would be payable sixty days after filing "proof of loss". And, the policies provided, in the event of dispute, for appraisal of the loss by arbitration. Upon non-payment sixty days after the submission of the proof of loss, and on May 7, 1956, the insured offered to arbitrate as provided in the policies. The insurers refused to arbitrate, and the court allowed interest from the date of the refusal, May 23, 1956. The amount ultimately adjudged to be due became payable under the terms of the policy on May 23, 1956, and the court correctly allowed interest thereon from that date. First National Ins. Co. of America v. Norton, 10 Cir., 238 F.2d 949; 23 O.S.1951 § 22; Fidelity-Phenix Fire Ins. Co. of New York v. Board of Education, supra; Phoenix Ins. Co., Hartford, Conn. v. Diffie, Okl., 270 P.2d 634.

The judgment is affirmed.