- STATE OF IOWA, Appellee, v. DEMMON LOWELL, Appellant.

Bastardy: COMPLAINT OF PROSECUTRIX. In a bastardy proceeding,
1   evidence that prosecutrix made no complaint is inadmissible, and an instruction that this fact should be considered as affecting her credibility was erroneous, especially where there is no such showing as would justify a submission of the question of rape, had that been the charge.

New Trial: EVIDENCE: DILIGENCE. The showing in support of a
2   motion for a new trial in a bastardy proceeding on the ground of newly discovered evidence as to the time of the alleged intercourse is considered and it is held that the evidence was not cumulative but authorized a new trial, and that there was no lack of diligence in securing the evidence.

New Trial: DISCRETION. The discretion of the trial court in grant-
3   ing a new trial is a legal one, and where it appears that the jury did not have an opportunity to pass upon the real issues in the case it will be granted as a matter of course.

*Appeal from Buchanan District Court.*—HON. A. S. BLAIR, Judge.

TUESDAY, APRIL 5, 1904.

BASTARDY proceedings to charge the defendant with the expense of maintaining an illegitimate child, born to one

Carrie Kujadt. It is claimed that the defendant is the father of the child. This he denied, and on the issue thus joined the case was tried to a jury, resulting in a verdict and judgment of guilty. Defendant appeals.—*Reversed.*

*E. E. Hasner* for appellant.

*H. W. Holman* for appellee.

Deemer, C. J.—But two questions are presented on the appeal—one the failure of the court to give an instruction asked by the defendant, and the other the correctness of the court's ruling in denying a petition for a new trial, filed by the defendant, based upon newly discovered evidence.

The instruction asked was to the effect that, if the prosecutrix made no complaint of the alleged intercourse with defendant at any time, such fact should be taken into account as affecting her credibility as a witness. It will be observed that this is a bastardy proceeding, and not a prosecution for rape. Such being the situation, the fact that the prosecutrix made no complaint of the alleged intercourse is a wholly immaterial matter, particularly so where, as in this case, there is no such showing as would have justified a submission of the crime of rape to a jury, had the charge been rape. The sole question here is the paternity of the child. Complaints made by the prosecutrix, which are in the nature of self-serving declarations, are not ordinarily admissible. An exception to the rule prevails in rape cases, but the presence or absence of complaints in such an action as this does not come within the exception. The procedure in this form of action is that which obtains in ordinary civil actions, and the rules of evidence are the same; hence declarations of the prosecutrix are not admissible. *State v. Spencer,* 73 Minn. 101 (75 N. W. Rep. 893); *Ramey v. State,* 127 Ind. 243 (26 N. E. Rep. 818). If not admissible for her, the fact that she fails to complain should not be considered against her. Moreover, there is no such showing in the evidence as would make the alleged intercourse rape.

1. COMPLAINT of prosecutrix.

II.   At the trial the prosecutrix, her father, and her mother testified that she went to defendant's house to work for the family, the last part of September or the first of Oc-

2. NEW trial
evidence:
diligence.

tober, 1901, and that the alleged intercourse occurred about three weeks thereafter.   The child was born on July 23, 1902.   Defendant's testimony tended to show that the girl came to his place on August 18, 1901; that she was there on September 1st, and left on September 9th.   This was for the purpose of showing that, according to the ordinary period of gestation, he could not have been the father of the child.   We do not know, of course, what the conclusion of the jury was on this matter, but may well assume that it found the version of the affair as given by the state's witnesses correct.   The verdict was returned on the 4th day of December, 1902.   Thereafter defendant filed a petition for a new trial, based on the ground of newly discovered evidence.   This petition came on for hearing at the May term, 1903, of the district court, and, after hearing the evidence introduced in support thereof, the trial court denied the same, and of this complaint is made.

The evidence offered in support of this petition clearly shows that the prosecutrix went to defendant's house on August 25, 1901.   This was finally admitted by the prosecutrix herself, after hearing the testimony of the witness whose evidence it is claimed was newly discovered.   This witness testified that he fixed the time with reference to  his  mother's birthday celebration, which occurred on August 25, 1901; that he met the father and the mother of the prosecutrix on that day, and that they told him their daughter was going to defendant's place on that day.   On this hearing prosecutrix admitted that she went to defendant's place on August 25, 1901.   It was also shown that, before the trial of the case, prosecutrix's mother asked the witness whose evidence it is claimed was newly discovered as to the date of the birthday celebration.  The witness said that he gave her the exact date, but the mother testified that his answer was that he did not know.  From the evidence offered in support of the peti-

tion for a new trial it now clearly appears that the prosecutrix went to defendant's home on August 25th, and that she was there but three weeks. So that if she is to be believed as to the time when the intercourse occurred, it must have been not later than September 14, 1901, and as the child was born on July 23, 1902, the period of gestation was three hundred and thirteen days. According to the expert evidence adduced, the ordinary period of gestation is two hundred and eighty days, although the limits are from two hundred and forty to three hundred and twenty. The expert said, however, that prolonged gestations were exceptional, and that in some countries the limit is three hundred days. But we need not speculate on the *medico-legal* aspect of the case. Suffice it to say that the jury never had an opportunity to pass upon what are now the conceded facts in the case.

Neither the date claimed by the state nor that presented by the defendant on the original hearing, was the true one. We are disposed to acquit all parties of any fraud or intentional misrepresentation in the matter, but it now appears that the state's witnesses as to time were each and all mistaken as to the date when the alleged intercourse occurred. According to their version of the matter, the intercourse took place on or about October 20, 1901, but it now appears, without conflict, that it was not later than September 14th. Time was an important element in the case, and as the jury never had an opportunity to pass upon the matter according to the very truth, we think a new trial should have been granted, unless it be for some of the reasons suggested by appellee's counsel in argument. One of these is that the testimony of the witness whose evidence it is claimed was newly discovered was cumulative, and therefore not sufficient to justify a new trial. We do not think it was cumulative in character. *Boggess v. Read,* 83 Iowa, 548.

On the original trial, no witness testified to any such circumstances as were detailed by the witness Tonn, whose evidence it is claimed was newly discovered. True, the effect of this witness' testimony was to fix the time when the

alleged intercourse occurred, but it was not of the same kind as that introduced on the original trial. See, as further sustaining our conclusions on this point, *Murray v. Weber,* 92 Iowa, 757; *Means v. Yeager,* 96 Iowa, 697; *Bullard v. Bullard,* 112 Iowa, 427.

Further, it is argued that there is no showing of diligence on the part of the defendant in discovering the witness Tonn before the trial of the original case. As to this, there was nothing in the circumstances surrounding the case which would even suggest to the defendant that Tonn knew anything of the case. Defendant knew, of course, that the time element was important, but he did not know, and had no reason to believe, that the witness Tonn had ever had any conversation with the prosecutrix's father and mother regarding the fact that their daughter was to go to defendant's house on a certain day. No doubt, defendant had many opportunities to inquire of the witness as to what he knew of the case, but there was nothing which would even suggest to him the propriety of making such inquiry. Sufficient diligence is shown.

Ordinarily, the granting of a petition for a new trial on the ground of newly discovered evidence is a matter resting in the discretion of the trial court, but this is a legal discretion, and where it appears that the jury did not have the real case before it, but acted upon an erroneous assumption as to the facts, and it further appears that these facts may have been material to a correct solution of the issues presented, a new trial should be granted as a matter of course.

3. NEW trial: discretion.

It must not be assumed that a jury on a new trial should come to a different conclusion from that reached on the original submission—that point we do not determine. Our holding is that defendant has the right to the verdict of a jury on what are now conceded to be the facts as to time. This he has never had. His failure to secure it was due to no fault of his own, and we think the petition for a new trial should have been granted.—REVERSED.