W. J. MORAN, Appellant, v. E. J. KEAN, Appellee.

No. 44338.

JUNE 21, 1938.

Hogan & Less, C. J. Lynch, and William M. Dallas, for appellant.

Kenline, Roedell & Hoffmann, Hal W. Byers, and McMartin, Herrick, Sloan & Langdon, for appellee.

MITCHELL, J.—This is an action at law to recover damages because of personal injuries sustained by W. J. Moran while riding as a guest in a Chrysler automobile owned by E. J. Kean and driven by another, in the State of Illinois. The answer was a general denial and further pleaded the Illinois guest statute, Smith-Hurd Stats. Ill., ch. 95 1/2, sec. 58a, which provided in substance that a guest cannot recover except upon proof of wilful and wanton misconduct. Evidence was offered and the case was submitted to a jury, which returned a verdict for the defendant. Plaintiff has appealed.

On October 17, 1935, a number of friends of W. J. Moran, all of whom lived in Cascade, Iowa, decided they would have a party for him as his birthday was the following day. Dr. Beiteman, a physician and surgeon, arranged for a dinner in Dubuque, and also arranged with E. J. Kean to use his car. The party consisted of Dr. Beiteman, Dr. Clark, a dentist, Louis Dandl, a butcher, W. J. Moran, cashier of the bank, and E. J. Kean, a lawyer. They drove to Dubuque in the Chrysler Air-Flow Sedan belonging to Kean and had dinner at the Elks Club. At about eight o'clock they left Dubuque for Galena, where they stopped for ten or fifteen minutes. On the return trip Dr. Beiteman drove the car. Mr. Kean sat beside him and Dr. Clark, Mr. Dandl, and Mr. Moran sat in the rear seat. They traveled over the same route they had followed when driving to Galena.

The accident happened about five or five and a half miles west of Galena, just west of a bridge over the Sinsinawa River, on paved highway No. 20. The highway at this point runs gen-

erally east and west. As it approaches the valley from the east it runs southwesterly and is downgrade and straight for a distance of 3,300 feet, until it reaches a point 100 feet east of the bridge. At that point it becomes almost level and runs in a westerly direction across the bridge. At the westerly edge of the valley it makes a gradual curve to the northwest and starts upgrade. At the point where the pavement makes this gradual curve to the northwest there was a gap in the guard rail along the south side. In this gap was a driveway into a field to the south, and west of the driveway there was a level place suitable for parking. On the evening of the accident a Chevrolet car was parked there, headed west. In that position the car was directly in line with the path the pavement would have followed if it had gone on straight west instead of curving to the north. There is some dispute as to whether the lights of the Chevrolet were burning. Dr. Beiteman and Dr. Clark were killed in the accident. Mr. Moran was severely injured and his memory of what occurred that evening is a complete blank.

Louis Dandl. who was riding in the back seat, was called as a witness for the appellant. He did not testify in regard to the speed at which the car was traveling but did testify as follows (we quote from the abstract):

"I am not sure that immediately preceding the happening of this accident, Dr. Beiteman said 'We are making 90.' I remember he said he would give them a fast ride. He said something like that when we left Galena. He said he would give them a fast ride. We were still in the Town of Galena; we were going out on Highway 20 when he said that; he made that remark when we left Galena coming back to Dubuque."

Opposed to this is the testimony of Mr. Kean, the appellee, who was the only other occupant of the car who testified. We quote from his testimony:

"Q. Now, from the time you left the automobile at Galena, came back to it, and Dr. Beiteman and Dandl came back to the automobile, you may state whether or not any statement was made by Dr. Beiteman to Mr. Dandl that he was going to give them a fast ride, or any words substantially like that? A. No statement like that was made in my presence. I didn't even know Dr. Beiteman was going to drive the car until he came to me and asked me to push over and let him drive."

Further quoting from Mr. Kean's testimony:

"At no time did he drive over 50 miles an hour. At times the car was driven slower than 50 miles an hour. Some times it dropped back to 40 miles an hour. My headlights were burning immediately preceding the accident. On the way west from Galena up to the time of the accident there was not any fog on the highway. The first fog we saw as we travelled westerly from Galena was just at the scene of the accident. We were riding along; there wasn't any evidence of any impending danger of any kind, until suddenly the headlights of our car met the lights of this car that was parked on the wrong side of the road. His tail light was lighted, and our driver pulled to the left. Up until the instant of the collision I did not know there was an automobile parked on the south side of the highway. It appeared to be on the road ahead of us. There was a slight curve or gradual curve to the right."

And so we see there is a material dispute between the only two witnesses who testified in this case in regard to the speed of the car on that evening. All that Mr. Dandl testified to was statements he said he heard the driver of the car make. He did not testify that in his judgment the car was going at any such rate of speed. It must be kept in mind that this is a guest case under the Illinois statute, which provides for recovery only where there is proof of wilful and wanton misconduct.

We are not here confronted with the question of the sufficiency of the evidence, for the court submitted this case to the jury and the jury returned a verdict for the defendant. The appeal here is based purely upon certain instructions given by the court, and upon newly discovered evidence. We turn to a consideration of the errors alleged.

I. It is the claim that the court erred in the failure to tell the jury of the four separate and distinct specifications of wilful and wanton misconduct, as charged by appellant in his petition. In submitting the issues to the jury the court, instead of using the letters a, b, c, and d, which were used in the petition in this case, joined them together by using the word "and" in two places. In analyzing the specifications set forth in the appellant's petition, the allegation that the driver was guilty of wanton misconduct in all four of the specifications was based

upon the charge that he was driving at a high, dangerous and reckless rate of speed. We quote from appellant's brief:

"It will be observed from the statement of the issues that each specification of wilful and wanton misconduct contains the element of 'excessive speed, * * * '."

In the case of Fleming v. Thornton, 217 Iowa 183, this court said at page 185, 251 N. W., at page 159:

"All three of these grounds deal with the sole question of driving a car with the knowledge that the brakes were defective and inefficient. The fact that the brakes on a car may be defective and inefficient raises a question of negligence, but not necessarily a question of recklessness. In other words, if one drives a car with defective brakes it does not constitute recklessness as a matter of law, and therefore the court did not err in failing to submit these first three grounds alleged to be reckless.

"It will be noticed in reading these alleged grounds of recklessness that all the matters set up in grounds 1, 2, and 3, are also set up in grounds 4 and 5. Whether or not the matters set out in grounds 4 and 5 in fact constitute recklessness is not before us. The district court assumed that they did and submitted the same to the jury and the jury found for the defendant. This therefore forecloses any question as to the correctness of the instructions given."

So here, each of the pleaded specifications dealt with the sole question of driving the car at a high and excessive rate of speed. However, the court in the case at bar did not submit only one of the specifications set out in the appellant's petition; he submitted all four of them, in the same identical language used in the petition, word for word.

In Caplan v. Reynolds, 191 Iowa 453, 182 N. W. 641, we read at page 457, 182 N. W., at page 642:

"While the plaintiff, in his petition, has, in form, stated four different allegations of negligence, they are, at best, but variations upon a single thought, the alleged lack of care on the part of defendant in approaching the place where the collision occurred; and, although the court did not state this allegation in the very language of the pleading, we think the law was stated with sufficient fullness and exactness to purge the charge of any prejudicial error."

The sole basis of appellant's complaint is the use of the word "and" in two places.

This court, in Fleming v. Thornton, 217 Iowa 183, at page 187, 251 N. W. 158, at page 160, said:

"The instructions given substantially follow the allegations of the plaintiff's petition; hence plaintiff cannot complain."

In the case at bar the court followed the issues as set forth in appellant's petition, and we fail to see any prejudicial error.

II. Appellant complains bitterly of the court's definition of "preponderance of the evidence," as given in Instruction 18.

In the case of Ball v. Marquis, 122 Iowa 665, 98 N. W. 496, we find this court said at pages 666, 667, 98 N. W., at page 497:

"The instruction is said to be erroneous because of the use of the words 'reasonably satisfies.' It is conceded, of course, that plaintiff was not required to prove his case beyond a reasonable doubt, and that all that was required of him was the production of the greater weight or preponderance of the evidence. Such is undoubtedly the law of this state. Coit v. Churchill, 61 Iowa 296, 16 N. W. 147; Bryan v. Railway, 63 Iowa 464, 19 N. W. 295; Callan v. Hanson, 86 Iowa 420, 53 N. W. 282; Rosenbaum v. Levitt, 109 Iowa [292] 295, 80 N. W. 393. The contention of appellant is that the instruction given in this case, in view of the language used, required of plaintiff not merely that he establish the facts of his case by a preponderance of the evidence, but that the evidence on his behalf must be such as to fairly set at rest the truth of every material fact necessary to a recovery. This contention centers upon the expression 'reasonably satisfies,' and it is the argument of counsel that such expression, fairly considered, could convey to the jury no other meaning than that the verdict must be for defendant, even though the weight of the evidence was with plaintiff, if the jurors were not reasonably satisfied of the inherent truth of the matters alleged. We have made the question thus raised the subject of full and mature consideration, and we reach the conclusion that, while the use of the expression is not to be commended, the jury could not fairly or in reason have been misled by the instruction as given. It will be observed that the expression criticized is used in defining the term 'preponderance of

the evidence,' and we think it must have been understood by the jury that a preponderance was established if, upon consideration of the evidence, the result was to 'reasonably satisfy' the minds of the jury that the greater weight thereof was with the plaintiff. In the particular respect now under consideration, the question differs from that which arose in Bryan v. Railway, supra. In that case the jury was told that 'by the term "preponderance of evidence" is meant testimony of such superior weight and convincing force as satisfies the mind of its truth.' It was properly held that such definition was erroneous, and for the all-sufficient reason that thereunder the jury might not put the evidence into scales, and by the balancing thereof determine upon the verdict to be rendered; but, on the contrary, the instruction made the requirement that a verdict for plaintiff could only be justified by a finding that in very truth the matters alleged by him existed as facts in the case.''

In the case of Priest v. Hogan, 218 Iowa 1371, 257 N. W. 403, we read at page 1373, 257 N. W., at page 404:

''It does not tell the jury that they must be convinced or satisfied of the truth of the evidence in order to find it of greater weight, but that the greater weight would be found with the evidence which, when fully and fairly considered, produced the stronger impression on the mind and was *more* convincing as to its truth. When the statement complained of is considered along with the whole instruction, we see no reason why it should cause any misunderstanding on the part of the jury as to the meaning of the term preponderance of the evidence or greater weight of the evidence.''

When the statement complained of in the case at bar is considered along with the whole instruction, it is apparent that the jury was not misled, because the court expressly told the jury that a preponderance of evidence means that evidence which ''appeals most forcibly to your judgment and is most satisfactory to your minds in determining upon which side of the issues is the truth and the right.''

In addition to this, in Instruction No. 19 the court said to the jury:

'' * * * but, take into consideration only such evidence as has been submitted to you, or lack of evidence, if any, and from

that alone, independent of all other consideration, acting impartially and without prejudice against, or sympathy in favor of, either of the parties to this case, giving a careful examination and consideration to all of the facts and circumstances before you, and to the testimony of each witness such weight and credit as you believe it entitled to receive, and guided by the law as given you in these instructions, bring in such a verdict as your best judgment will approve, and such as will be warranted and sustained by the evidence.''

When these statements are considered with the language complained of we cannot say that there was prejudicial error. We do not approve the instruction and it would be better if trial courts were to follow the stock instruction covering ''preponderance of the evidence.'' However, we are satisfied that the error was without prejudice.

▉ III. It is also alleged that the instruction is erroneous because the court used the word ''testimony''. It is argued the court should have used the word ''evidence''.

In Grayson v. Durant, 43 Okl. 799, 144 P. 592, the supreme court of Oklahoma said:

'' ' * * * The court further instructed the jury:

'' ' * * * If from the facts and circumstances of this case you find that plaintiff has established by a preponderance of the testimony that Israel Grayson was not of age at that time, you will so indicate as to the first question submitted to you.'

''It is contended by plaintiffs in error that by use of the word 'testimony' in this instruction the jury was precluded from a consideration of the census card offered in evidence, for the reason that testimony includes only oral statements of witnesses. With this contention we are unable to agree. While, technically, it is true that there is a difference between the terms 'testimony' and 'evidence,' and the former relates to oral statements of a witness, and the latter includes all that may be submitted to a jury, whether it consists of such statements of witnesses, or papers, documents, and records, yet in common parlance they are used synonymously and understood to signify the same thing, and it is improbable that the jury in arriving at their verdict made any distinction between the meaning of the terms.'' Pages 594, 595.

In Mann v. Higgins, 83 Cal. 66, 23 P. 206, the supreme court of that state said at page 207:

"The court, when instructing the jury on the subject of the preponderance of evidence, used the word 'testimony,' instead of 'evidence,' and appellant contends that this (was reversible error. Of course, 'evidence' is the more comprehensive word, and includes 'testimony,' which latter, strictly speaking, means only that evidence which comes from living witnesses who testify orally. But in common language (and, sometimes, even, among lawyers), the two.words are frequently used synonymously, and it is entirely improbable that the jury was misled in the premises."

It seems to us the jury could not have been misled by the use of the word "testimony" in place of the word "evidence".

Some other objections are raised to instructions, all of which have been given careful consideration. We find no prejudicial error in same.

IV. We come now to the last assignment of errors, that the court erred in overruling ground 8 of appellant's motion for a new trial which was predicated on newly discovered evidence, as shown by the affidavit of Cleland A. Evert, which was attached to the motion.

The testimony that Evert would give is claimed by appellant to be as follows: That he is a member of the Illinois State Highway Police and on the evening of October 17, 1935, in performance of his official duties made an investigation of the accident out of which this case arises. That he observed the tracks made by appellee's car; that they left the pavement on the left hand side of the road as you are proceeding west; that the two wheels of the car proceeded along the.shoulder of the pavement, and that the left hand side of appellee's car scraped along the guard rail; that the tracks of the car were visible for some distance back from the end of the guard rail and proceeded in practically a straight line to the tree standing at the south side of the highway with which appellee's Chrysler collided at the time it struck the Chevrolet car that was parked there.

Bruce Stewart, sheriff of the county in which the accident occurred, testified that he made an investigation immediately after the accident and that there were tire marks coming off the

338

highway. "There were some tracks there in the highway showing where the Chrysler came off the highway."

There is also the testimony of Arnold C. Knoebber, who "noticed the tracks where the car had gone thru the soft mud. These tracks led to the place where the car lay."

In other words, the testimony which is now offered would be simply cumulative. This court has time and again held that a new trial will not be granted upon newly discovered evidence which is only cumulative.

In addition to this, the burden of proving due dilligence is upon the appellant.

As said by this court in Danner v. Cooper, 215 Iowa 1354, at page 1361, 246 N. W. 223, at page 226:

"The burden is upon the appellants to show such due diligence. The affidavits must contain more than the mere conclusions of the movants and their attorneys that they have made diligent effort to obtain the evidence, or that they have exercised due diligence in that respect."

This accident happened on October 17, 1935, and the petition was filed on December 14, 1936. The case was not reached for trial until in May of 1937. A year and a half had elapsed from the time of the accident until the time of the trial. The evidence now offered is the evidence of a patrolman who investigated the accident on behalf of the officials of the State of Illinois.

The case was fairly tried. It was submitted to the jury, which returned a verdict for the appellee. Finding no error, it necessarily follows that this case must be, and it is hereby, affirmed.—Affirmed.

STIGER, C. J., and ANDERSON. DONEGAN, HAMILTON, and SAGER, JJ., concur.