R. Burbridge, Appellee, v. W. A. Briggs, Appellant.

No. 46533.

October 17, 1944.

L. A. Moe and Charles M. Groman, both of Mason City, for appellant.

Uhlenhopp & Uhlenhopp, of Hampton, for appellee.

Smith, J.— Three vehicles were concerned in this collision. Defendant, with a 1940 Buick four-door sedan, was on

October 22, 1943, proceeding eastward on paved Highway No. 18 in Cerro Gordo county some miles west of Nora Springs. His car was not physically involved in the collision but plaintiff, who was driving in the same direction behind him, claims that defendant's negligence in operation of his (defendant's) car was the proximate cause of the collision between plaintiff's car and a truck coming from the opposite direction belonging to one Kiefer.

Plaintiff in Count I claims damages for personal injury and for damage to his own car, and in Count II, as assignee, for damage to the Kiefer truck. There was a verdict and judgment in his favor on both counts. Defendant on appeal enumerates five alleged errors for reversal but the questions involved will be discussed under four divisions.

The collision occurred in daylight. Both plaintiff (appellee) and defendant (appellant) were traveling east. Appellee was driving a 1928 Buick four-door sedan with a two-wheel trailer attached. He had come four hundred miles, stopping only for lunch and several times for short periods. In the trailer he had four ladders, some paint, and about five hundred pounds of potatoes. He testifies he saw the appellant's car ahead of him for some distance, with the cars at distances apart varying from one hundred fifty to two hundred feet. Both were traveling from thirty to thirty-five miles an hour. The pavement was dry; the day clear. Appellee was alone in his car; appellant was accompanied by his wife.

As they approached an intersection where it developed appellant intended to turn right on a graveled road, appellee says he noticed appellant had slowed up without any signal and that the cars were closer together:

"I was watching this car all the time. I didn't know what he was going to do, there was no signal or anything and I supposed he had just slackened his speed and would continue ahead."

Again he says:

"I didn't know there was an intersection there, I hadn't been on 18 for a long time. When I see he started to make the

turn I put my brakes on and stayed in behind until I see I was going to hit this car; I couldn't make the stop * * * and I jerked my car out and I missed him * * * by inches, but just as I pulled my car out, I had it almost to a stop, the truck hit me. * * * I had my eyes glued on it [appellant's car] and I didn't see this truck at all. I guess there is a little incline there.''

This is the substance of appellee's version of what happened. On both direct and cross-examination there are many repetitions and additional details not necessary to set out. There are estimates of speed and distance which, after all, were merely estimates for the jury to appraise.

Both appellant and his wife say appellant signaled his intention to turn:

''I stuck my left hand out and held it down.''

It is unnecessary to state in detail the conflicting testimony bearing on appellant's alleged negligence. No question of its sufficiency to create a jury question is raised. It is contended, however, that appellant's negligence, if any, was not a proximate cause of the injury to the Kiefer truck involved in Count II of appellee's petition; and as to Count I, that appellee has not shown freedom from contributory negligence. Freedom from contributory negligence on the part of the driver of the Kiefer truck is conceded.

I. Appellee's negligence, if any, is therefore to be viewed in two aspects. In one division of his brief appellant discussed its bearing on the alleged cause of action for injury to the Kiefer truck. He argues there that appellee was negligent, that such negligence was the *sole* proximate cause of the collision, and that the court should have directed verdict for defendant (appellant) on Count II.

This argument proceeds on the theory that appellee, over a distance of one hundred feet, failed to observe the slowing down of appellant's car before turning south and that ''a signal [by appellant] could not have warned the appellee against anything more than he saw.'' In other words, even if appellant was negligent in failing to give signal of his intention to turn, such negligence was not a proximate cause of the injury to the

Kiefer truck. It amounts to a claim that appellee failed to maintain a proper lookout.

A similar argument is advanced on the issue of freedom from contributory negligence as bearing on appellee's right to recover for his own personal injury and property damage.

We are not prepared to hold that the trial court was wrong in submitting these questions to the jury. In Ryan v. Trenkle, 203 Iowa 443, 446, 212 N. W. 888, 890, cited by appellant, the injured boy was on a bicycle which met defendant's car at a street intersection and was struck by reason of said car making a left turn, allegedly without signal. It was held he was not within the then existing statutory classification which required such signal *"to the crossing officer*, if there be such, or *to the drivers of vehicles following."* [Code, 1924, section 5032.]

In Isaacs v. Bruce, 218 Iowa 759, 254 N. W. 57, also cited by appellant, it appeared the driver of the front vehicle intended to turn *left* but pulled out partly on the right shoulder to permit the vehicle behind to pass. We held the evidence conclusively showed that the driver of the latter vehicle did not see the car ahead and therefore the failure to give signal could not be the proximate cause of the collision.

Neither of these cases applies to the record here. Clearly appellee, coming from behind, would have qualified under the statute as it stood at the time of the Ryan v. Trenkle decision. And, with equal clearness, the facts here differ materially from those involved in Isaacs v. Bruce, supra. Appellee testifies that he was watching the movements of the car and driver ahead. Under his testimony and theory of the case the emergency was created when appellant slowed down without any signal to negative a probability that he intended to continue forward.

We cannot say as a matter of law that he was guilty of negligence or that he has failed to produce evidence of freedom from contributory negligence. At one point in his testimony he says:

"I see that the car was going at a slower rate of speed just before we got to the intersection. He was going in the same direction I was, it was hard for me * * * to distinguish that he had changed his rate of speed without any signal until I had got

some closer to him. If he had signalled me I would have known what the condition was, but I didn't know what he was going to do. After I got within fifty feet of him he came almost to a stop quite suddenly."

This quotation fairly summarizes his testimony. Appellant, by argument based on estimated distances and speeds, attempts to discredit this picture, but it was for the jury to appraise the situation in the light of the whole record. It is our duty to view it in the light most favorable to appellee. It is not our duty to say how we as jurors would have decided but we are only to determine whether the evidence justified submission of the case to the jury. As already indicated, we think there was no error in this respect.

II. Appellant claims that the trial court erred in refusing to give a requested instruction on the subject of lookout:

"If you should find that the defendant was guilty of any of the acts of negligence charged by the plaintiff, but that the plaintiff's danger and the resulting emergency, if any, were the result of the failure of the plaintiff to maintain a lookout, then, and in that event, your verdict should be for the defendant on Count Two of the plaintiff's petition."

The requested instruction ignores the possibility of concurrent negligence of both plaintiff and defendant, in which case Kiefer would have had a cause of action against both. As to Count II, appellee stood in Kiefer's shoes as assignee from him. Counsel for appellant in his opening statement expressed it thus:

"I think the law is that Mr. Kiefer * * * could sue both Mr. Burbridge and Mr. Briggs if he could establish they were both negligent [and] that the negligence of both contributed to the injury, then he could collect from either or both. * * * It is an anomaly of the law * * * but if Mr. Burbridge here as one of the negligent parties buys that claim, he stands in the shoes of Kiefer * * *."

The requested instruction did not correctly express this thought. Furthermore, the trial court, by Instruction No. 9, ad-

vised the jury as to the duty of drivers "to use reasonable care to keep such lookout to avoid injury and damage to himself as well as to any others who may be at the time likewise lawfully using said highway, as would be exercised by a reasonably prudent and cautious person under the same or similar circumstances."

There is more to the instruction, not essential here to quote. No exception was taken to it and it seems to be in proper and unobjectionable form.

There was no error in refusing the instruction asked for by appellant.

III. Appellant assigns error upon the court's Instruction No. 11. Instruction No. 7 gave the jury the substance of section 5025.04 of the Code of Iowa, and instructed that a violation thereof would be negligence in itself. Instruction No. 11 told the jury:

"The driver of a motor vehicle upon the public highway has a right to assume that others using the said highway will obey the law, until in the exercise of reasonable caution he should have known otherwise."

Appellant's contention is that Instruction No. 11 should have been amplified so as to say:

"* * * that in determining the safety of decreasing speed or turning to the right, one has a right to assume unless he knows or should know to the contrary that the driver of the following car will maintain a lookout, keep his car under reasonable control and exercise reasonable care and prudence for his own safety."

We do not believe the court's instruction as given was inadequate. The subject matter of the proposed amplification surely would not excuse failure of the driver of the head car to give the statutory signal of his intention.

IV. One other assigned error remains to be noticed. It relates to the cross-examination of appellee upon the subject of the alleged assignment from Kiefer of his right of action against appellant.

The petition alleged and the answer denied that appellee

was the owner of Kiefer's claim by assignment. After appellee testified to the ownership of the Kiefer claim by written assignment, the following cross-examination took place:

"Q. That written assignment was procured after you employed Mr. Uhlenhopp? A. Yes, sir. Q. Suit had been commenced against you by Mr. Kiefer for the damages he claimed to have sustained in this accident and that suit had been commenced before you procured an assignment of his claim by paying him for it, is that correct? Mr. Uhlenhopp: That is objected to as immaterial and not cross examination. Mr. Moe: It is an implied admission, Your Honor. The Court: Sustained, exceptions. * * * [In Chambers] Mr. Moe: It is stipulated between counsel for the parties that if the witness had been permitted to answer the preceding question his answer would have been 'Yes.' You agree to that? Mr. Uhlenhopp: The answer would be yes, now, yes."

Without passing on the correctness of the court's ruling at this point we are of the opinion the error, if any, was not reversible.

Upon the whole record the judgment of the trial court is—Affirmed.

All JUSTICES concur.