WM. J. WESTERGARD, appellant, v. DES MOINES RAILWAY
COMPANY, appellee.

No. 47988.

(Reported in 52 N.W.2d 39)

496

MARCH 4, 1952.

D. Cole McMartin and Herrick & Langdon, all of Des Moines, for appellant.

Dale S. Missildine and J. W. Albert, both of Des Moines, for appellee.

THOMPSON, C. J.—About 11:30 p. m. on January 6, 1949, a collision occurred between a pickup truck, owned and operated by plaintiff, and defendant's streetcar on the Seventh street viaduct in the city of Des Moines. Both the truck and streetcar were traveling north across the viaduct immediately before the collision. With the truck some distance in the rear of the streetcar both had climbed the south approach of the viaduct, crossed a level space of some hundreds of feet at the top, and as the streetcar reached the beginning of the down slope on the north it stopped, in accordance with practice and regulations of the company. Plaintiff crashed into the rear end of the streetcar, either while it was momentarily stopped or just as it got under way again. He claims the defendant was negligent in stopping its streetcar suddenly without warning directly in front of his truck, when the operator knew or should have known of the presence of traffic at the rear of said car.

Upon trial the jury returned a verdict for plaintiff. Defendant's motion for new trial was granted upon the sole ground of newly discovered evidence, and denied as to all other grounds. Plaintiff appeals from the ruling granting a new trial; defendant, having raised the questions by motions for directed verdict, by motion for new trial and by motion for judgment notwithstanding verdict, appeals from the trial court's refusal to hold plaintiff had failed to show any negligence of the defendant and to hold plaintiff had failed to show freedom from contributory negligence, each as a matter of law. We shall first consider plaintiff's appeal.

I(a). The newly discovered evidence upon which defendant relied, and which the trial court found sufficient, consisted of affidavits of Thomas Freestone and Charles L. DeVore. They deposed that on the evening in question, as they were entering Freestone's automobile near the intersection of Seventh Street and Clifton Avenue, they saw the pickup truck driven by plaintiff turn from Clifton into Seventh, going up over the sidewalk

as it did so and sideswiping the fender of an automobile parked near by. Without stopping, the truck went north on Seventh Street, crossing a bridge south of the viaduct and weaving from side to side. Affiants say they followed plaintiff, in order to stop him or to try to get his license number. The truck speeded up to about 50 miles per hour, and affiants followed at a distance of 50 to 75 yards. Because of the high speed of the truck and because it was weaving across the street they were afraid to try to stop it. Freestone, the driver, sounded his horn but plaintiff paid no attention. As the pickup truck started up the south incline of the viaduct it was traveling about 50 miles per hour. Affiants followed about 75 to 100 yards in the rear. When they reached the south crest of the viaduct they saw a streetcar stopped at the north crest. It was lighted and plainly visible. When the truck was about 150 yards from the streetcar it swerved to the left as if to pass on that side; then to the right, then when about 30 yards from the car to the left again, and struck the car in the rear. Affiants say they drove up on the left side of the truck immediately; that its left door had been opened by the force of the collision and they saw plaintiff slumped in the seat, unconscious and evidently needing medical help; and so they did not alight from their car, but after a momentary stop went on across the viaduct and to a garage which was open, from where they summoned an ambulance. They then drove back to the scene of the accident and remained until the ambulance appeared. They say, however, that at no time did they give anyone their names; nor did they advise anyone of their knowledge of the facts until they read in a newspaper a verdict had been returned for the plaintiff herein. They then communicated with defendant's counsel and as a result made the affidavits which served as a basis for granting of the new trial of which plaintiff complains.

A passenger on the streetcar, one Chris Helms, testified for the defendant that immediately prior to the collision he was sitting so he could, and did, look to the rear, and he observed the lights of plaintiff's truck approaching about 100 feet away at the time the streetcar came to a full stop. He further said the truck was traveling at about 40 to 45 miles per hour, and it came straight on, without swerving, until it crashed into the rear of the streetcar.

■ The errors which plaintiff urges are that the evidence offered as newly discovered is unworthy of belief, it is at best merely cumulative, or impeaching, or both, and due diligence in discovering it is not shown. We think there is no merit in the claim the material statements contained in the affidavits are not credible, and shall not discuss them from that viewpoint further than to say we think there is nothing inherently unbelievable in them. A jury might or might not give them credence. Nor do we think there is substance in the complaint the evidence offered is wholly impeaching. Much of the evidence in any case necessarily impeaches the truth of that introduced by the opposing party; but it is also generally, as here, substantive and tends to prove the facts contended for by the offeror or to disprove the case made by the opposition.

I(b). The important points raised by the plaintiff concern the questions of cumulative evidence and due diligence. We shall first consider the error predicated upon the thought that the trial court was in error in granting the motion for new trial, because the facts set forth in the affidavits above referred to would be cumulative only to other evidence already offered and admitted in the case. We have set forth the substance of the affidavits and the testimony of the witness Helms in some detail because of their importance in considering plaintiff's claimed error at this point.

■ Motions for new trials based upon newly discovered evidence are not favored in the law, and should be closely scrutinized and granted sparingly. Opposed to this rule in the instant case is another, which is that the trial court has considerable discretion in granting new trials, and its exercise of its judgment in such cases will be interfered with only when there is a manifest abuse of such discretion. And we will interfere less readily when it has granted the motion than when it has denied it. Maland v. Tesdall, 232 Iowa 959, 970, 5 N.W.2d 327, and cases cited. There must be an apparent abuse of discretion to warrant reversal of a ruling granting a new trial, and this applies to those granted because of new evidence discovered as well as in other cases. These rules are important, and the situation here must be considered with them in mind. We do not consider whether we would have acted as did the trial court; the only matter proper for our determination is, Did that court abuse its discretion? This elim-

inates from our consideration a great number of the authorities dealing with the question of cumulative evidence as grounds for a new trial, since they are concerned with the question of whether the lower court properly refused to grant a new trial when it appeared the offered evidence was merely cumulative to that already in the case. If, in the case at bar, the trial court had denied a new trial upon that ground we would then have the converse of our present proposition; but he granted it, and the only question before us is whether he went beyond the bounds of a legal discretion in so doing.

██ Cumulative evidence is said to be evidence of the same kind and to the same point as that previously introduced. Larson v. Meyer & Meyer, 227 Iowa 512, 518, 519, 288 N.W. 663 (quoting from 1 Greenleaf on Evidence, section 2); Mullong v. Mullong, 178 Iowa 552, 159 N.W. 994. It is often difficult to say when the new evidence falls within these limits. In the instant case the substance of the affidavits offered here would, if admitted in evidence, be to a considerable degree of the same kind as that of the witness Helms, and it would likewise go largely to the same fact questions, which is to say, to the same point. We think, however, that the newly discovered evidence is not entirely or strictly cumulative. It goes somewhat further and introduces some new details. But we also think the question is not of importance to us here. The test is not whether the offered newly discovered evidence is cumulative, but whether, cumulative or not, it is sufficient to justify the trial court, in the exercise of a legal discretion, in concluding there is a reasonable probability of a different result upon another trial.

We said in Maland v. Tesdall, supra, a new trial will not *ordinarily* be granted because of newly discovered evidence which is merely cumulative. However, the rule seems well established that the trier is within his proper discretion in granting a new trial, even upon cumulative evidence, if he determines a different result might probably be expected in view of the offered testimony. We said in Larson v. Meyer & Meyer, supra:

"In a matter of this kind a large discretion is lodged in the trial court. * * * He had the witnesses before him, he could observe the reaction of the jury to their testimony, and was in

a better position to judge of what another jury might do than we are able to do."

While in the case just cited a new trial was denied, the same reasoning applies when it has been granted.

The rule that the court may grant a new trial when the new evidence offered is cumulative only is a corollary to the one which gives the trial court a large discretion in determining whether a different result might reasonably be expected upon another trial, with the newly discovered matter introduced. The court should have determined, and we must assume did determine in this case there is a reasonable probability of a different result because of the new evidence. The reason cumulative evidence is often said not to require a grant of a new trial is that the jury has already had similar proof before it, and has not found it sufficient. But in determining whether a different result might be reached even cumulative evidence may be considered by the trial court, and if it holds justice requires a new trial, and a different result is likely, we cannot ordinarily interfere. We said in Utseth v. Pratt-Mallory Co., 208 Iowa 1324, 1325, 1326, 227 N.W. 115, 116, in which a new trial had been granted:

"It is contended that the newly discovered evidence was cumulative. It is such, to some extent. We think it is not wholly so. No definite rule can be laid down, differentiating evidence that is cumulative from evidence which is not. *We have held that that question also rests largely in the discretion of the trial court.*" (Italics supplied.)

To the same point is 66 C. J. S., New Trial, section 113, page 320: "Even if newly discovered evidence is cumulative, that alone will not be decisive against it as ground for granting a new trial in the exercise of a sound judicial discretion * * *." The modern trend is to consider chiefly whether a different result is probable, even though the offered proof is cumulative only. Thus, in 39 Am. Jur., New Trial, section 171, page 177, we find this rule expressed: "And the authorities hold that a new trial should be granted for newly discovered cumulative evidence where it is probable that the effect of such evidence will be to produce a different verdict on retrial."

502

Many other authorities support this view. In Manahan v. Jacobson, 226 Minn. 505, 508, 33 N.W.2d 606, 608, the Minnesota Supreme Court said: "Where newly discovered evidence is cumulative only, it is within the discretion of the trial court to determine whether the ends of justice require a new trial because thereof." To the same effect are State v. Wynne, 153 La. 414, 96 So. 15, Johnson v. Commonwealth, 188 Ky. 391, 222 S.W. 106, and State v. Hawkins, 121 S. C. 290, 114 S.E. 538, 27 A. L. R. 1083.

In People v. Selby Smelting & Lead Co., 163 Cal. 84, 94, 124 P. 692, 696, Ann. Cas. 1913E 1267, the rule is thus stated: "* * * affidavits presenting evidence of a cumulative character may, and often do, cause a trial judge to grant a motion for a new trial, but whether such motion receives favorable or adverse ruling, the whole matter is addressed to the judge, whose discretion will not by this court be interfered with except in cases of manifest abuse." There is also an interesting and comprehensive discussion of the question in 20 R. C. L. 295, section 77.

We find no abuse of discretion on the part of the trial court in determining the evidence offered might probably be expected to produce a different result upon another trial.

I(c). Likewise, the trial court has a considerable latitude in determining the question of due diligence on the part of the movant in discovering the evidence offered in support of the motion. We have so held in many cases. In Utseth v. Pratt-Mallory Co., supra, we said: "Whether sufficient diligence had been shown to procure the same was a question peculiarly within the observation and discretion of the district court."

In Doty v. Jamieson, 214 Iowa 1321, 1322, 243 N.W. 359, 360, is this: "* * * the lower court, in the exercise of its discretion, might have found that the appellee was not guilty of negligence in failing to obtain said evidence * * *." See also Mills v. Hall, 202 Iowa 340, 344, 209 N.W. 291.

It must be remembered in this case the two affiants say they paused only momentarily at the scene of the accident, did not alight from their car, but drove on to summon an ambulance. When they returned they stopped, but at that time there was nothing to advise the motorman or any other representative of the company present they were more than casual passers-by, at-

tracted by the evidence of a collision. They say they gave their names to no one. We think the showing sufficient to justify the holding of the court that due diligence sufficiently appeared, this holding being within the limits of its proper discretion. Its position is supported by several Iowa cases. In Wilbur v. Iowa Power & Light Co., 223 Iowa 1349, 1355, 275 N.W. 43, 46, is this:

"'A party to a suit may not be accused of a lack of diligence when he possesses no means of knowing that the evidence subsequently discovered was previously obtainable.'" (Quoting from State v. Lowell, 123 Iowa 427, 99 N.W. 125.) The same quotation is cited with approval in Henderson v. Edwards, 191 Iowa 871, 873, 183 N.W. 583, 16 A. L. R. 1090. The showing of diligence required is that a reasonable effort was made. The applicant is not called upon to prove he sought evidence where he had no reason to apprehend any existed. He must exhaust the probable sources of information concerning his case; he must use that of which he knows, and he must follow all clues which would fairly advise a diligent man that something bearing on his litigation might be discovered or developed. But he is not placed under the burden of interviewing persons or seeking in places where there is no indication of any helpful evidence.

Many of the rules expressed in the cases which have been concerned with motions for new trials because of newly discovered evidence are intended for, and are of much more value to, the trial court in its initial determination of the problem than to the appellate court. It is rightly given a wide discretion. The trial judge has an opportunity which we do not have to observe the courtroom drama as it unfolds. He observes the tones of voice, the shades of expression, of the witnesses; he has before him the jury and sees its visible reactions. To him are known the many incidents, often trivial in themselves, which throw some light upon the proceedings, and may in the end affect the result. Before his eyes pass the lights and shadows of the entire trial. He is the impartial observer, and in many respects the arbiter, of the contest. He has the opportunity to know the requirements of substantial justice better than any appellate court can do, and when he exercises a discretion given him by the law we should be slow to interfere. In this case, it was for him to say whether the newly discovered evidence, whether cumulative or not, might rea-

sonably be expected to bring about a different result upon a retrial; and the facts as to defendant's diligence in discovering it were likewise to be determined within his fair discretion. We find no error upon plaintiff's appeal.

II. Upon its cross-appeal defendant assigns two errors: First, that there was no competent evidence in the record showing it was negligent in the respect charged in plaintiff's petition and submitted to the jury; and second, that the evidence, considered in the light most favorable to plaintiff, shows plaintiff was guilty of contributory negligence as a matter of law. It is important to keep these two assigned errors in mind since defendant seems at times to be arguing the court erred in instructions. No such errors are assigned, and so, under established rules, cannot be considered.

The sole ground of negligence submitted by the court was this: "That he [defendant's employee] suddenly stopped his streetcar without warning directly in front of the path of plaintiff's truck." Also, of course, there was submitted the issue of plaintiff's duty to show freedom from contributory negligence. Defendant moved for a peremptory verdict at the close of plaintiff's evidence, and at the close of all the evidence; and after verdict and judgment moved for judgment notwithstanding verdict. In each of these motions the substance of the assigned errors was raised and each motion was denied. The questions of defendant's negligence and plaintiff's freedom from contributory negligence are so closely related we shall consider them together.

Plaintiff, as a witness for himself, testified that when the streetcar came to the top of the incline leading down the northern side of the viaduct "it just suddenly stopped." He did not see it slacken speed, but it stopped right in front of him; he was looking ahead all the time and it stopped. He admits he saw the car ahead of him for some distance, that it was lighted and clearly visible. His case sums up to the contention that, when he was following the car at a distance of about thirty feet it stopped abruptly and without giving any signal at a place which was not a street intersection and where one unacquainted with the rules of the defendant-company and its manner of operating its cars would have no reason to anticipate a stop would be made. He says the streetcar was traveling at 20 to 25 miles per hour

just prior to the stop, and he was following at about the same speed; he applied his brakes when he saw it stop but was unable to prevent the collision. The defendant does not claim any signal of the intention to stop was given by the operator of the street-car. The stop at the north crest of the decline was not made for service to passengers, but was apparently a safety measure required of all cars by the company rules before starting down the north slope of the viaduct. Plaintiff had no actual knowledge of this regulation.

Plaintiff's version of the accident is of course disputed, but we must consider the evidence in the light most favorable to him and as it might be believed and adopted by reasonably minded persons. Defendant argues the physical facts make plaintiff's story so incredible it should not be believed, but without going into detail on the question we cannot agree with this contention. It is only in exceptional circumstances that the physical facts speak so strongly they can be taken as controlling as against direct testimony, and the situation here does not meet that test.

Defendant thinks there is no evidence defendant was in any manner negligent, and that, on the other hand, there is a clear showing plaintiff was guilty of contributory negligence. In Central States Electric Co. v. McVay, 232 Iowa 469, 5 N.W. 2d 817, we held the driver of a car who fails to stop in time to prevent a collision with a vehicle ahead of him on the roadway is not necessarily contributorily negligent as a matter of law. Defendant thinks there is a distinction because the vehicle ahead was an unlighted farm wagon, and in the darkness the driver of the following vehicle did not see it in time to stop. But this argument is nullified by Burbridge v. Briggs, 235 Iowa 12, 15 N.W.2d 909. There, the driver of the rear car saw the lead car for some distance, but when it slowed to make a right turn he was unable to stop in time to prevent a collision and so turned to his left and struck a truck coming from the opposite direction. He brought suit against the driver of the car ahead and we held there was a jury question. There, the sudden slowing of the first car with the failure of the driver to give a signal of his intention to slow down or turn to his right was held to make a jury issue upon the question of the defendant's negligence; and to excuse the plaintiff, at least to the extent the jury was properly permitted

to determine the question of his freedom from negligence contributing to his injury. Defendant contends there was no statutory requirement here that the operator of the streetcar should give a signal. But we think there was a jury question upon the issue of the right of the streetcar to stop suddenly without notice or warning to following traffic. In Nees v. Minneapolis Street Railway Co., 218 Minn. 532, 538, 16 N.W.2d 758, 762, the plaintiff's evidence showed the streetcar stopped suddenly in a street intersection, resulting in a collision with plaintiff's following truck. After conceding there was no statutory or ordinance requirement that streetcars should be equipped with signal lights and therefore no duty existed for them to have such warning apparatus, the Minnesota Supreme Court said:

"But where a motorman suddenly stops a streetcar within an intersection without giving a signal or warning of any kind and without proper regard for traffic in the rear, a jury is clearly authorized to find that such act constitutes negligence unless the motorman can be absolved from a charge of negligence because acting in an emergency. The risk reasonably to be perceived defines the duty to be obeyed. Hence, here, if the motorman could reasonably have perceived that the sudden stopping of the streetcar to accommodate the pedestrians imperiled the safety of vehicles immediately in the rear, it was his duty either to continue on to the next regular stop, or, if he elected to stop within the intersection, to signal or otherwise warn such vehicles."

This defines the law applicable to such situations as we hold it to be.

Defendant cites several Iowa authorities, but all of them were decided before Burbridge v. Briggs, supra. Many of the cases antedate Central States Electric Co. v. McVay, supra, and were distinguished therein. We are satisfied to follow the two cases last cited.

Cases from other jurisdictions relied upon by defendant we do not find to be in point. Perhaps LeMaster v. Fort Worth Transit Co., Tex. Civ. App., 142 S.W.2d 908, is closest to supporting defendant's claim. But here the factual situation was that the bus which was struck in the rear stopped at a regular passenger loading point, although its front end was 8 or 9 feet past the marking sign. In Rankin v. Nash-Texas Co., Tex. Civ. App., 73 S.W.2d

680, 684, the actual holding was that one of the defendants, Euless, whose following car crashed into the one in which plaintiff was riding when it made a sudden and unexpected stop, was not guilty of negligence. We find this language: "* * * the unexpected and unforeseen occurrence causing the happening event of the Euless automobile does not cast upon the rear motorist the burden to further explain her action in running into the Rankin automobile." Roberson v. Rodriguez, La. App., 186 So. 853, while holding that the driver of the rear car on a country highway was negligent as a matter of law, recognizes there is a different rule on the streets of a city, where traffic is constant and frequent, and under such circumstances all drivers must take notice of the near approach of other cars.

Cirquitella v. C. C. Callaghan, Inc., 331 Pa. 465, 467, 200 A. 588, 589, contains language in direct contradiction of defendant's theory. While holding a peremptory verdict was proper under the facts shown, the Pennsylvania Supreme Court said:

"Of course it does not follow that the mere happening of a rear-end collision constitutes negligence as a matter of law on the part of the operator of the rear automobile. The occurrence of such a collision does not raise a presumption that the driver of either vehicle was negligent. *It is a question of fact for the jury to be determined from all the evidence of the case.* The plaintiff must prove that the collision resulted from the negligence of defendant." (Italics supplied.)

Nor does Riccio v. Ginsberg, 49 R. I. 32, 35, 139 A. 652, 654, 62 A. L. R. 967, 969, aid defendant's cause. We find this language: "* * * an operator is not relieved of all obligation to consider possible danger to traffic in the rear. Proper regard for the safety of himself and any passengers or guests, as well as for the safety of traffic in the rear, may often make it the duty of an operator, *when about to start or stop or to change the speed or direction of his automobile to give timely notice of his intended action."* (Italics supplied.)

It is not for us to pass upon the weight of the evidence. If there is a jury question engendered by it, we have no proper concern with what the verdict may be. We have indicated our holding that there was a sufficient showing to warrant submission of

the two controlling issues in the case, that is, whether defendant was guilty of negligence, and whether plaintiff has shown freedom from contributory negligence. This determines cross-appellant's appeal.

Costs will be taxed one half to each party.—Affirmed on both appeals.

WENNERSTRUM, GARFIELD, SMITH, and MANTZ, JJ., concur.

MULRONEY, OLIVER, BLISS, and HAYS, JJ.; dissent.

MULRONEY, J. (dissenting)—I respectfully dissent.

I. We start with the proposition that applications for new trial on the ground of newly discovered evidence are not favored. In Eller v. Paul Revere Life Ins. Co., 230 Iowa 1255, 1260, 300 N.W. 535, 538, where we reversed the trial court's order granting a new trial on the ground of newly discovered evidence, we said:

"It is frequently said that courts do not favor the granting of a new trial because of newly discovered evidence. The rule is stated in 20 R. C. L. 289, 290, section 72, as follows:

"'While newly discovered evidence, material to the party applying, which he could not with reasonable diligence have discovered and produced at the trial, is ground for a new trial, applications on this ground are not favored by the courts, and * * * should always be subjected to the closest scrutiny.'"

II. We next reach the general rule barring the granting of a new trial on evidence that is merely cumulative. The reason for this rule is obvious. New trials are ordinarily granted to hear new evidence, not to hear new witnesses present the same or similar evidence as was heard in the original trial. This from Eller v. Paul Revere Life Ins. Co., supra, at page 1262:

"It is well settled that a new trial will not be granted for newly discovered evidence which is merely cumulative. Larson v. Meyer & Meyer, 227 Iowa 512, 518, 288 N.W. 663; Smart v. Liddle, 229 Iowa 599, 600, 294 N.W. 886; Simons v. Harris, 215 Iowa 479, 245 N.W. 875."

III. I accept, as being established by much precedent, that the trial court does have discretion to relax the general rule that

newly discovered evidence, cumulative in character, will not justify the grant of retrial. Some courts hold the rule can be relaxed when the new evidence confirms or corroborates the testimony given only by a party or other interested witness. See annotation 158 A. L. R. 1253. Broadly stated, I think the rule is the trial court is authorized to relax the rule and grant a new trial though the newly discovered evidence is cumulative, when it fairly appears the new evidence is of such high probative value' that a new trial with the new evidence will probably produce a different result. This is probably what is meant by the statement in the general rule that newly discovered evidence that is *merely* cumulative will not authorize the granting of a new trial.

The following statement from 66 C. J. S., New Trial, section 201(8), page 505, correctly states the general rule as to cumulative evidence as a ground for new trial and the trial court's discretion: "* * * there is no discretion on the part of the court to grant a new trial where it appears clearly, and without doubt or question, that the new evidence is cumulative * * *. The rule that the new evidence must not be merely cumulative has been said not to be inflexible, and the court may, in its discretion, relax the rule and grant a new trial in a particular case in the interests of justice."

The statement that the trial court is authorized to relax the rule as to newly discovered cumulative testimony "in the interests. of justice" means there must be something about the new evidence that enables him to determine a new trial will probably result in a different verdict. His determination that the new evidence will probably produce a different result must be based on something more than the fact that the losing litigant will have more witnesses tell the same or similar story on retrial. The majority agree the newly discovered testimony is cumulative in character. So the first question in this case is, as I see it, whether the newly discovered testimony is *merely* cumulative or there is something about it which fairly indicates it was of such superior probative value to the evidence it corroborates as to allow the trial court to exercise his discretion and hold a new trial might probably result in a different verdict. If the newly discovered evidence has no more probative value than the evidence the jury has heard and rejected it is merely cumulative and the trial court

is bound by the rule. It is not a question of abuse of discretion. The trial court has no discretion to allow the new trial to let in merely cumulative evidence or evidence that rises no higher in probative value than the evidence heard by the jury in the original trial.

IV. To my mind this case presents the most usual instance of merely cumulative evidence. A traffic accident occurs. Besides the drivers of the two vehicles there are disinterested eyewitnesses. The whole question in the case is whether the streetcar made a sudden stop when plaintiff was following in his truck about 25 or 30 feet away. Plaintiff had no disinterested eyewitness. His evidence consists of his own testimony. As opposed to this the defendant had two disinterested eyewitnesses and their superintendent of transportation. Defendant did not bother to have the testimony of the motorman, who was the employee of defendant-company charged with negligence in plaintiff's petition which was on file for two years before the case was tried. The superintendent said he had left their employ and was somewhere in Virginia, but there is no showing his testimony was unavailable. The company probably felt the motorman would, so far as he was able, merely corroborate the testimony of its other witnesses.

The superintendent testified as to the company rule providing that streetcar operators stop at this place to insure their having the car under control as they start down the incline of the bridge. The fair inference from all the testimony is that the streetcar came to a momentary stop. There was no evidence of any signal by the operator of the streetcar and he was not there to tell the jury whether he made a sudden or slackening stop. Mr. Griffith, a passenger on the streetcar, said the streetcar stopped and then started up again and was immediately hit. Evidently he did not see plaintiff's truck. But Mr. Helms, another passenger on the streetcar, saw the truck. He too said the streetcar had stopped and had just started forward again when the truck hit. He saw the truck when it was 100 feet back of the streetcar when the streetcar was just about at a complete stop. He said the truck came straight on, just about in the streetcar tracks, about 40 to 45 miles per hour without any change of speed until the crash occurred.

The most that can be said for the newly discovered evidence is that it will give defendant two more disinterested witnesses (who, according to their identical affidavits, will testify as one) who saw and observed everything from some considerable distance from the crash. They judge the speed of plaintiff's truck at 50 miles an hour. They will contradict defendant's other witnesses as to the length of time the streetcar was stopped. They will testify the streetcar was stopped when plaintiff was a block or a block and a half behind it and that it remained stopped until pushed forward by the crash of plaintiff's truck into the rear of the streetcar.

Clearly this evidence was cumulative. It was evidence of the same kind and character—disinterested eyewitness testimony. It was to the same point: the speed, movement and stopping of the two vehicles involved during the period just before the crash. In Eller v. Paul Revere Life Ins. Co., supra, 230 Iowa at page 1263, we defined cumulative testimony as "evidence of the same kind to the same point." This evidence answers that description. It would seem to me this is the most usual kind of cumulative testimony. As stated in many accident cases there are frequently a number of eyewitnesses. When some testify and others are discovered after verdict, a new trial should not be granted to let the after-discovered witnesses give their version unless from the showing made their evidence will have such strong probative value that a different verdict will probably result on retrial.

It is quite evident the jury did not believe the disinterested witness Helms who sat in the streetcar and said he watched the truck as it traveled the last 100 feet *toward him*, traveling at the rate of 40 to 45 miles an hour, and crashed into the streetcar just after it had stopped and started forward. Is it at all likely on the retrial the jury will believe DeVore and Freestone who sat in their convertible a block to a block and a half away? What is there about the new testimony which would possibly lead one to believe the result would have been different if the jury had heard it? True, the new witnesses say plaintiff was traveling five miles faster than Helms testified, but "speed" testimony is the opinion or estimate of the witness. The new witnesses occupied no superior place in the accident scene which would make

their testimony worth more than that of Helms. They certainly could not see what occurred better than Helms who was, you might say, right on top of the crash. They were certainly no more disinterested than Helms. If the rule that cumulative testimony will not justify a new trial is to be abrogated on such a record as is here presented, then I submit it vanishes entirely and the trial court's discretion is absolute. I think the new evidence was plainly cumulative and of such insufficient probative value that the trial court was not warranted in relaxing the rule; that he had no discretion to grant a new trial.

V. Rule 244(g), Rules of Civil Procedure, provides the new trial may be granted for the newly discovered material evidence "which could not with reasonable diligence have been discovered and produced at the trial." The defendant had the burden to show such diligence. Eller v. Paul Revere Life Ins. Co., 230 Iowa 1255, 300 N.W. 535, and cases cited. The rule which we approved in early cases is summed up in Danner v. Cooper, 215 Iowa 1354, 1361, 246 N.W. 223, 226, as follows:

"The burden is upon the appellants to show such due diligence. The affidavits must contain more than the mere conclusions of the movants and their attorneys that they have made diligent effort to obtain the evidence, or that they have exercised due diligence in that respect. The affidavits must show what was done in order to discover and produce the evidence. See First State Bank of Riverside v. Tobin, 204 Iowa 456, 215 N.W. 767; Smith v. Wagaman, 58 Iowa 11, 11 N.W. 713.".

The above language was approved in Moran v. Kean, 225 Iowa 329, 338, 280 N.W. 543.

Here also the question is not whether the trial court abused his discretion. He just has no discretion to grant a new trial, even if he believed the new evidence would change the result, if the movant fails to sustain the burden of due diligence to discover and produce the testimony.

In Shepherd v. Brenton, 15 Iowa 84, at page 90, this court held: "* * * if it appeared in this case, that a new trial was granted * * * to introduce testimony to obtain which no sufficient diligence had been used, we should have no hesitation in reversing such order, for in such a case the court would have no discretion."

What is the showing here? The defendant states in its brief: "The diligence of the defendant in attempting to present all of the evidence obtainable for the consideration of the jury prior to trial is shown in the aforementioned affidavits" (of De-Vore and Freestone). These affidavits state the affiants did not give their names to anyone at the scene of the accident and told no one connected with the lawsuit that they witnessed the accident, until after the verdict. There is no showing at all of what defendant did in its effort to discover or produce this testimony. These new witnesses did play a part in the accident scene in that they drove to the McGrevey Taxicab Company station about four blocks away and stopped and informed them of the accident and requested that they send an ambulance. The defendant knew somebody had ordered the ambulance, and that fact would suggest there was someone who possibly knew something about the accident. For all that appears in the record the new witnesses might have given their names to the taxi company at the time they informed the employees of the taxi company of the accident, and ordered the ambulance. If they did, a mere telephone call would have disclosed their identity. At least the defendant should have assumed there was testimony in existence because someone who knew something about the accident called the ambulance. Reasonable diligence would seem to require some effort to discover evidence which a party must have known existed. The record here is barren of any showing of diligence on the part of defendant. It is plainly evident the defendant did not want to bother too much about this lawsuit. It did not want to bother about having the motorman, their ex-employee, return for the trial, or his deposition taken, yet he was the employee who was charged with negligence.

The affidavits, which defendant argues show its diligence in attempting to present all of the evidence obtainable, show what the affiants did. They do not show what defendant did in order to discover and produce the evidence. With no showing of reasonable diligence to discover and produce the testimony, the motion for new trial should have been overruled.

I would reverse on the ground defendant failed to sustain its burden of showing reasonable diligence to discover and pro-

duce the evidence before trial. And I would hold in any event the newly discovered evidence was merely cumulative and the trial court had no discretion to grant a new trial.

BLISS, OLIVER and HAYS, JJ., join in this dissent.